# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| CHEMFREE CORPORATION, and<br>ZYMO INTERNATIONAL, INC. | ) )<br>) | |
| Plaintiffs, | ) )<br>) | Civil Action No. |
| v. | ) )<br>) | _____ |
| J. WALTER, INC., and<br>J. WALTER COMPANY, LTD., | ) )<br>) )<br>) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## COMPLAINT

NOW COME Plaintiffs ChemFree Corporation ("ChemFree") and
ZYMO International, Inc. ("ZYMO") hereby file their Complaint and
show this Court the following:

## THE PARTIES

1.

Defendant J. Walter, Inc. ("JWI") is a Delaware corporation
with its principal place of business located at 810 Day Hill
Road, Windsor, Connecticut 06095-1704.

2.

JWI may be served under Georgia's long-arm statute through
its registered agent for service of process in Connecticut: R&C
Service Company; located at 280 Trumbull Street, Hartford, CT

06103-3597; or its registered agent for service of process in Delaware:  The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware  19801.

3.

Defendant J. Walter Company, Ltd. ("JWCL") is a Canadian Company.  JWCL manufactures and otherwise obtains products for importation into the United States for commercial sale.  JWCL is affiliated with JWI and, among other things, JWI markets and distributes products in the United States that it obtains from or through JWCL.

4.

JWCL may be served with process under Georgia's long-arm statute through and under the Hague Convention at its place of business at 5977 Trans-Canada Highway West, H9R 1C1, Montreal, Quebec, Canada.

5.

ChemFree is a corporation organized under the laws of the State of Georgia with its principal offices and place of business in the State of Georgia, located at 8 Meca Way, Norcross, GA 30093.

6.

ZYMO is a corporation organized under the laws of the State of Florida with its principal office and place of business in the

State of Florida, located at 1882 Inlet Cove Court, Fleming
Island, Fla.  32003.

## JURISDICTION AND VENUE

7.

This is an action for patent infringement and false patent
marking arising under the patent laws of the United States, Title
35, United States Code.

8.

This Court has subject matter jurisdiction over all causes
of action set forth herein pursuant to 28 U.S.C. §§ 1331 and 1338
(a).

9.

This Court has personal jurisdiction over JWI, since JWI
sells and ships products into the State of Georgia for purposes
of commercial gain.

10.

This Court has personal jurisdiction over JWCL, since JWCL
manufactures products for importation into the United States with
the knowledge and expectation that its U.S. affiliate, JWI, will
sell and distribute such products throughout the United States,
including the State of Georgia, for purposes of commercial gain.

11.

Venue is proper in this judicial district and division pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## FACTS COMMON TO ALL COUNTS FOR JUDICIAL RELIEF

12.

ChemFree and ZYMO are engaged in the business of manufacture, distribution, and sale of parts washer systems that incorporate a capability to bioremediate hydrocarbon contaminants washed from the surface of soiled parts.

13.

ChemFree and ZYMO are co-owners of United States Patent No. 7,980,257 (the "'257 Patent"). Together, ChemFree and ZYMO own all of the right, title and interest in the '257 Patent. A true and correct copy of the '257 Patent is attached hereto as Exhibit "A."

14.

JWCL imports into the United States a line of parts washer products under the trademark "Bio-Circle™."

15.

JWCL imports into the United States a parts washer product known as the "Bio-Circle Maxi" product. A true and correct copy of a page from a Bio-Circle product catalog depicting the Bio-Circle Maxi is attached hereto as Exhibit "B."

16.

JWCL imports into the United States a parts washer product known as the "Bio-Circle Compact" product. The Bio-Circle Compact is depicted on Exhibit "B" attached hereto.

17.

JWCL imports into the United States a parts washer product known as the "Bio-Circle Mini" product. The Bio-Circle Mini is depicted on Exhibit "B" attached hereto.

18.

JWCL has, from time to time, imported into the United States a parts washer product known as the "Bio-Circle IO-200" product. A true and correct copy of a page from a Bio-Circle product catalog depicting the Bio-Circle IO-200 is attached hereto as Exhibit "C."

19.

JWCL has, from time to time, imported into the United States a parts washer product known as the "Bio-Circle IO-400" product. The Bio-Circle IO-400 is depicted on Exhibit "C" attached hereto.

20.

JWCL has, from time to time, imported into the United States a parts washer product known as the "Bio-Circle BR-200" product. A true and correct copy of a print media advertisement depicting the Bio-Circle BR-200 is attached hereto as Exhibit "D."

21.

JWCL has, from time to time, imported and sold in the United States a parts washer product known as the "Bio-Circle BR-100" product.  A true and correct copy of a Bio-Circle product data sheet depicting the Bio-Circle BR-100 is attached hereto as Exhibit "E."

22.

JWCL imports into the United States a microbial cleaning fluid known as Bio-Circle™ L for use in any and all of the aforementioned Bio-Circle™ parts washers.  A true and correct copy of a page from a Bio-Circle™ product catalog advertising Bio-Circle L cleaning fluid is attached hereto as Exhibit "F."

23.

JWI is engaged in the business of, among other things, distributing and selling Bio-Circle parts washers that it obtains from and through JWCL.

24.

JWI is also engaged in the business of distributing and selling Bio-Circle L cleaning fluid for use in Bio-Circle parts washers.

## COUNT I

### INFRINGEMENT OF THE '257 PATENT BY JWCL AND JWI

25.

ChemFree and ZYMO repeat and incorporates by reference, as if fully restated herein, the averments set forth in paragraphs 1-25 hereinabove.

26.

On July 19, 2011, the '257 Patent was duly and legally issued to inventor James C. McClure et.al. and entitled "Parts Washing System."

27.

ChemFree and ZYMO are co-owners, by assignment, of the '257 Patent, and have the right to bring suit for patent infringement thereon.

28.

JWCL, and JWI have unlawfully infringed one or more claims of the '257' Patent by making, using, importing, offering to sell and/or selling articles that infringe the claims of the '257 Patent, including by making, using, importing, offering to sell and/or selling the above described Bio-Circle parts washer products and Bio-Circle cleaning fluid.

29.

JWCL and JWI have engaged in activities that constitute direct infringement, contributory infringement, and/or inducement

to infringe the claims of the '257 Patent, in violation of 35
U.S.C. § 271.  Such activities include, but are not limited to,
the sale of Bio-Circle model Maxi, Compact, and Mini parts
washers in conjunction with the sale of Bio-Circle L fluid.  In
addition, JWCL and JWI sell Bio-Circle L fluid to existing owners
and operators of Bio-Circle BR-100, BR-200, IO-400, and IO-200
model parts washers, knowing that such fluid is especially made
for use in Bio-Circle bioremediation parts washers.

30.

ChemFree and ZYMO have suffered damages by reason of JWCL
and JWI's infringement of the '257 Patent for which ChemFree and
ZYMO are entitled to relief under 35 U.S.C. § 284.

**COUNT II**

**ENTITLEMENT TO PROVISIONAL DAMAGES**

31.

ChemFree and ZYMO repeat and incorporate by reference, as if
fully restated herein, the averments set forth in paragraphs 1-32
hereinabove.

32.

The '257 Patent issued from U.S. Non-Provisional Patent
Application Number 12/903,250 filed October 13, 2010, and which
claimed priority back to September 30, 19994.  The application
was published as U.S. published application number US
2011/0036377 on February 17, 2011.  A true and correct copy of

- 8 -

the published patent application is attached hereto as Exhibit "G."

33.

The invention claimed in the published patent application (Exhibit "G" hereto) is substantially identical to the invention claimed in the '257 Patent, the only differences in the claims being minor changes in punctuation.

34.

On or about March 24, 2011, ChemFree furnished JWCL and JWI with written notice of publication of the patent application leading to issuance of the '257 Patent.  A true and correct copy of the March 24, 2011, email message to JWCL and JWI's counsel is attached hereto as Exhibit "H."

35.

The March 24, 2011 email (Exhibit "H" hereto) constituted due and lawful notice to JWCL and JWI of ChemFree and ZYMO's provisional rights to reasonable royalty damages under 35 U.S.C. § 154(d).

36.

By virtue of the foregoing, ChemFree and ZYMO are entitled to reasonable royalty damages under 35 U.S.C. § 154(d)(3) during the period March 24, 2011, through the date of issuance of the '257 Patent in addition to any other damages that it may otherwise be entitled to after issuance of the '257 Patent.

## COUNT III

### WILLFUL INFRINGEMENT

37.

ChemFree and ZYMO repeat and incorporate by reference, as if fully restated herein, the averments set forth in paragraphs 1-36 hereinabove.

38.

On or about July 29, 2011, prior to the institution of this action, ChemFree sent JWCL a copy of the '257 Patent, together with a written statement of ChemFree's belief that Bio-Circle parts washer products model Maxi and Mini infringed the '257 Patent (*inadvertently misspelled as the '258 patent*).  A true and correct copy of the July 29, email communication to which a copy of the '257 Patent was attached is attached hereto as Exhibit "I."

39.

Prior to issuance of the '257 Patent, JWCL and JWI were made aware of the patent prosecution history leading to issuance of the '257 Patent.  Among other things, JWCL and JWI were aware that the Patent Examiner had reviewed and considered all of the prior art and the patent invalidity contentions that JWCL and JWI had communicated to ChemFree during the period 2004 to 2011 and that the Patent Examiner had allowed the claims of the '257 Patent to issue despite having reviewed and considered JWCL and JWI's invalidity contentions.

- 10 -

40.

From March 24, 2011, to the present, including the period after receipt of the above referenced July 29, 2011, email (Exhibit "I" hereto), neither JWCL nor JWI has sent any oral or written communication to ChemFree or its counsel explaining, describing, or disclosing how their accused parts washer products are distinguishable from the scope of the claims of the '257 Patent.

41.

JWCL and JWI's conduct subsequent to receipt of the July 29 (Exhibit "I" hereto) email messages has been objectively reckless in that JWCL and JWI have persisted in their infringing conduct despite an objectively high likelihood that their actions constituted infringement of a valid patent.

42.

In view of, among other things, the fact that the Patent Examiner had before him JWCL's and JWI's previously asserted alleged prior art and invalidity contentions and allowed the '257 Patent to issue over such prior art and contentions, it was either known by or obvious to JWCL and JWI that they were engaging in conduct that risked infringement of ChemFree's '257 Patent.

43.

As further evidence of the willful nature of JWCL's infringing conduct, ChemFree and ZYMO show that they have obtained patent rights covering their bioremediating parts washer invention in Europe, Canada, and Brazil and other countries around the world.

44.

JWCL has been knowingly and intentionally violating ChemFree's patent rights around the world, including the United States, Europe, Canada, Brazil, and other countries, since on or about 2000.  JWCL's infringing conduct has persisted despite knowledge that the validity of ChemFree and ZYMO's European patent has been upheld by the European Patent Office in opposition proceedings initiated by other European competitors.

45.

The willfulness of JWCL and JWI's continuing infringement warrants imposition by the Court of treble damages pursuant to 35 U.S.C. § 284.

## COUNT IV

## FALSE PATENT MARKING OF THE BIO-CIRCLE IO-400

46.

ChemFree and ZYMO repeat and incorporate by reference, as if fully restated herein, the averments set forth in paragraphs 1-45 hereinabove.

47.

On or about October, 1994, ChemFree introduced the first parts washer with a bioremediation capability into the market in the United States.

48.

Since 1994, ChemFree has obtained patent protection for its bioremediation parts washer invention in the United States, Canada, and various countries in Europe, South America, and the Far East.  Among others, ChemFree obtained U.S. Patent Nos. 5,961,733; 6,019,110; 6,044,854; 6,074,491; 6,095,163; 6,318,387; 6,328,045; 6,374,835; 6,440,226; 6,451,125; 6,571,810; and the '257 Patent.

49.

During the first few years after developing its bioremediation parts washer, ChemFree entered into a business relationship with Graymills Corporation of Chicago, Illinois ("Graymills") whereby ChemFree sold its then patent-pending bioremediation parts washers to Graymills under a private label

manufacturing relationship.  Depicted immediately below is a
graphical depiction of Graymills model Bio-777 parts washer that
ChemFree private label manufactured for Graymills during the mid-
to-late 1990's.



**Figure 1 – Graymills Bio-777 Parts Washer.**

50.

In addition to supplying parts washing systems to Graymills
under a private label manufacturing relationship, ChemFree also
provided technical assistance to facilitate Graymills'
development of its own internally manufactured bioremediation
parts washer apparatus.  Two bioremediation parts washers that
Graymills developed using ChemFree's patented technology are the
Graymills model Bio-436 and Bio-536 parts washers.  A graphical
depiction of the Bio-436 and Bio-536 parts washers is shown
immediately below.



**Figure 2 – Graymills Bio-436 and Bio-536 Parts Washers.**

51.

Sometime on or about mid-1999, JWCL purchased a Bio-436 Parts Washer from Graymills.

52.

Sometime on or about 2000, JWCL entered into a private label manufacturing relationship with Graymills whereby JWCL purchased Bio-436 parts washers from Graymills for resale and distribution in Europe.  A graphical depiction of JWCL's private label version of the Bio-436 parts washers is shown below.



**Figure 3 – Bio-436 in JWCL's Green Color Scheme**

53.

Sometime on or about 2003, JWCL and JWI began importing, distributing, and selling a private label version of the Graymills Bio-536 parts washer in the United States that was marketed and re-sold by JWCL and JWI as the Bio-Circle BR-100 parts washer.  A graphical depiction of BR-100 is shown below.



**Figure 4 – Bio-Circle BR-100 Parts Washer**

Graymills manufactured a three-part filter system for the Bio-436, Bio-536, and BR-100.  A graphical depiction of the three components of the filter system is shown below.



**Figure 5 – The Graymills three-part filter system.**

54.

The three-part filter system depicted immediately above is comprised of a stainless steel grate, a cylindrically shaped porous sponge, and a metal wire basket.

55.

The stainless steel grate component of the three-part filter system was designed to filter out relatively coarse particles much larger in size than 500 microns.

56.

The cylindrically shaped porous sponge component of the three-part filter system was designed to filter out particles of 100 microns in size or larger.

57.

The metal wire basket component of the three-part filter system was designed to filter out particles of about 500 microns in size or larger.

58.

Sometime on or about 2003, JWCL furnished the Denios company in Germany with a BR-100 parts washer machine in connection with an effort to develop a private label manufacturing relationship for a new parts washer with Denios.

59.

Sometime on or about early 2004, JWCL and JWI began to import the Bio-Circle BR-200 parts washer into the United States.

The apparatus components of the BR-200 parts washer were
manufactured and/or otherwise supplied to JWCL and JWI by Denios.
A graphical depiction of the BR-200 parts washer is shown below.



**Figure 6 – Bio-Circle BR-200 Parts Washer**

60.

The early versions of the BR-200 that JWCL and JWI sold in
the United States were equipped with a conically shaped plastic
filter that JWCL and JWI referred to internally as the "coffee
filter."  A graphical depiction of the "coffee filter" obtained
from JWCL and JWI's web site is shown below.



**Figure 7 – BR-200 with two-part or "coffee filter"**

61.

JWCL and JWI experienced difficulty with an excessive rate of cleaning fluid evaporation from the BR-200 parts washing system.  As a result, JWCL and JWI began utilizing the Graymills three-part filter system with the cylindrically shaped sponge pictured above in lieu of the two-part coffee filter in later versions of the BR-200.

62.

Sometime on or about 2005, JWCL and JWI entered into negotiations with Mr. Bert Overland to acquire Mr. Overland's interest in U.S. No. 6,057,147 entitled, "Apparatus and Method For Bioremediation of Hydrocarbon-Contaminated Objects," (the "Overland '147 Patent").  The Overland Patent was issued by the United States Patent and Trademark Office, ("USPTO") on May 2, 2000.  A true and correct copy of the Overland '147 Patent is attached hereto as Exhibit "J."

63.

JWCL and JWI did not acquire any rights in the Overland Patent from Mr. Overland until after JWCL and JWI had made sales of the BR-100 and the BR-200 parts washing systems in the United States.  After acquiring Mr. Overland's patent, neither JWCL nor JWI made any material design changes to either the BR-100 or BR-200 to cause them to conform to the scope of the claims of the Overland '147 Patent.

64.

The Overland '147 Patent has four claims.  Claims 1 and 4 are independent claims and Claims 2 and 3 depend from Claim 1.

Claim 1 of the Overland '147 Patent states as follows:

1. A method for continuous bioremediation of a hydrocarbon-contaminated object comprising the steps of:

placing said hydrocarbon-contaminated object in a washer basin and continuously cleaning said object by introducing and recycling through said basin in contact with said object a cleaning solution comprising microorganisms of a genus selected from the group consisting of Achromobacter, Actinobacter, Alcaligenes, Arthrobacter, Bacillus Nocardia, Flavobacterium, Peudomonas and mixtures thereof;

said microorganisms exponentially increasing and degrading hydrocarbons into water and carbon dioxide;

draining microbe cleaning solution containing hydrocarbons from said washer basin through a screen that removes large grit particles into a biochamber reservoir;

aerating said microbe cleaning solution in said reservoir to provide oxygen for the microorganisms;

heating said microbe cleaning solution in said reservoir to a temperature of between about 90° to 112 ° to maximize microbial growth in said microbe cleaning solution;

continuously removing heavy sediment from said microbe cleaning solution into a sediment trap;

**continuously screening said microbe cleaning solution through a plurality of filters to remove sediment of less than 10 microns to prevent sludge from forming in said reservoir**; and

recycling said microbe cleaning solution having sediment less than 10 microns removed to said reservoir or to said washer basin and then to said reservoir.

(emphasis added).

65.

At or prior to the time that JWCL and JWI acquired rights in the Overland '147 Patent, neither the BR-100, nor the BR-200 with the "coffee filter," nor the BR-200 with the three-part filter – continuously screened a microbe solution to remove particles of sediment of less than 10 microns in size – within the meaning of claim 1 of the Overland '147 Patent.

66.

Claim 4 of the Overland '147 Patent states as follows:

4. An apparatus for continuous bioremediation of a hydrocarbon-contaminated object comprising:

(i) a washer basin for continuously cleaning said hydrocarbon-contaminated object, said washer basin having means for introducing and recycling a microbe cleaning solution comprising microorganisms of the genus selected from the group consisting of Achromobacter, Actinobacter, Alcaligenes, Arthrobacter, Bacillus, Nocardia, Flavobacterium, Pseudomonas and mixtures thereof, for washing said hydrocarbon-contaminated object, means for draining microbe cleaning solution containing hydrocarbons from said washer basin into a biochamber reservoir and means for screening said microbe cleaning solution upon entry into said biochamber reservoir; and

(ii) said biochamber reservoir having a means for temperature control between about 90° to 112 ° F. to maximize microbial growth in said microbe cleaning solution for degrading hydrocarbons in said solution, means for aerating said microbe cleaning solution, means for agitating and circulating said microbe cleaning solution, an outlet means to direct said microbe cleaning solution to **a plurality of filters for filtering said microbe cleaning solution to remove sediment of less than 10 microns**, an inlet means to return said microbe cleaning solution from said filters to said biochamber reservoir or to said washer basin and then to said reservoir; means for trapping and removing sediment

    from said microbe cleaning solution, and means for
    supporting said washer basin and biochamber reservoir.

(emphasis added).

                                67.

    At or prior to the time that JWCL and JWI acquired rights in

the Overland '147 Patent, neither the BR-100, nor the BR-200 with

the "coffee filter," nor the BR-200 with the three-part filter –

had filters that removed particles of sediment of less than 10

microns in size – within the meaning of claim 4 of the Overland

'147 Patent.

                                68.

    In connection with acquiring rights in the Overland '147

Patent, JWCL and JWI entered into a consulting, marketing and

promotional agreement with Mr. Overland whereby, among other

things, Mr. Overland agreed to participate in the marketing and

promotion of JWCL and JWI' line of Bio-Circle parts washers.

                                69.

    In connection with his consulting, marketing, and

promotional agreement, Mr. Overland went to a photography studio

where he donned a red laboratory coat and posed for a series of

promotional photographs.  In one or more such photographs, Mr.

Overland is seen cradling a laminated enlargement of the first

page of the Overland '147 Patent.  A true and correct copy of

such photograph as it appeared on JWCL and JWI's internet web

site is shown below and is also attached hereto as Exhibit "K."



**The father of bioremediation parts washers talks from experience...**

Mr. Bert A. Overland is one of the leading scientific advisors in the development of **Bio-Circle**™. A researcher and inventor in the field of bioremediation, he developed the key patent for the method and apparatus of accelerated bioremediation.

**Mr. Bert A. Overland (Bio)**

Mr. Bert A. Overland established his credentials as the leading authority in bioremediation applied to parts washers, through years of research and development and close collaborations with world renowned scientists such as micro-biologists Dr. Jack Collins and Dr. Walter Spanenberg and Chemist Conrad E. Kaiser, as well as Dr. Carl H. Oppenheimer, Professor Emeritus of Marine Sciences, University of Texas in Austin who was accredited for discovering the seven (7) families of hydrocarbon degrading aerobic microbes tested and used by Mr. Overland over years of experimentation.

Mr. Overland held several leadership roles as a senior executive with GM working in engineering reliability. He then started an academic career as Professor at a Washington State College in the field of advanced automotive technology.

Through his experience in the automotive industry, he became keenly aware of the need to eliminate solvents in auto repair and maintenance facilities, for both the benefit of the workers' health as well as the environment.

Bert Overland with copy of US Patent

The idea to combine bioremediation and parts cleaning came together naturally out of his experience. He spent many years perfecting his system in the field and through testing and validation at independent, accredited laboratories throughout the US.

In January 1997, Mr. Overland filed the patent on "Apparatus and method for bioremediation of hydrocarbon-contaminated objects" with the US Patent Office. The patent #6,057,147 was awarded May 2nd, 2000 and is now owned by **Walter Surface Technologies**.

Thanks in part to Mr. Overland's knowledge and experience, the **Bio-Circle**™ division of **Walter Surface Technologies** is on the leading edge as a "sustainable development company" committed to meeting the needs of the present without compromising the ability of future generations to meet their own needs.

Mr. Overland... part of the **Bio-Circle**™ success story.

**Figure 8 – Bio-Circle Web Site advertisement page featuring a photograph of Mr. Overland holding the Overland '147 Patent, and a biographical sketch of Mr. Overland.**

70.

At pertinent times, JWCL has imported into the United States
a parts washer system that it markets and sells under the product
model designation Bio-Circle IO-400.  A graphical depiction of
the Bio-Circle IO-400 is shown immediately below.



**Figure 9 – Bio-Circle IO-400**

71.

At pertinent times, JWCL has imported into the United States
a parts washer system that it markets and sells under the product
model designation Bio-Circle IO-200.  A graphical depiction of
the Bio-Circle IO-200 is shown immediately below.



**Figure 10 – Bio-Circle IO-200**

72.

Surface Technologies IP, AG is the owner by assignment of the Overland Patent, that was recorded with the USPTO on or around October 25, 2005.  The assignment history of the Overland Patent is attached hereto as Exhibit "L."

73.

Surface Technologies IP, AG is closely affiliated with JWCL and JWI and has authorized JWCL and JWI to mark their products, literature, and related items as being covered by the Overland '147 Patent.

74.

One of the features claimed in the Overland '147 Patent is filtration of the cleaning fluid down to a particle size of 10 microns.

75.

JWCL and JWI's BR-100 parts washer does not now and never did filter sediment at a particle size of 10 microns or less.

76.

JWCL and JWI's BR-200 parts washer does not now and never did filter sediment at a particle size of 10 microns or less.

77.

JWCL and JWI's IO-400 parts washer does not now and never did filter sediment at a particle size of 10 microns or less.

78.

JWCL and JWI's IO-200 parts washer does not now and never did filter sediment at a particle size of 10 microns or less.

79.

Whereas JWCL and JWI imported, distributed and sold the BR-100 and BR-200 in the United States before acquiring the Overland '147 Patent, sometime near or shortly after JWCL and JWI obtained rights in the Overland '147 Patent, they discontinued the BR-200 and replaced it in the market place with the Bio-Circle IO-400 model parts washer.

80.

For purposes of the instant litigation, the Bio-Circle IO-400 model parts washer is substantially identical to the BR-200. In particular, the IO-400 uses the same Graymills' three-part filter system between the sink and the tank below as had been previously used on the BR-100 and the later versions of the BR-200.

81.

In addition to the three-part filter system that is situated between the sink and the tank, the IO-400 has a second filter that is situated in the path of the fluid as it is pumped and flows from the tank up to the faucet above the sink.  Such second filter shall hereinafter be referred to as the IO-400 Upstream Filter and is further shown in the graphical depiction below.



**Figure 11 – Bio-Circle IO-400 with Upstream Filter.**

82.

The Upstream Filter on the IO-400 filters sediment particles at a particle size of about 100 microns or greater.

83.

The IO-200 has two filtration systems.  One such filter is located in the drain hole where used cleaning fluid drains from the fluid into the tank.  The second such filter system is located in an analogous position to the Upstream Filter on the IO-400.

84.

The filtration system component with the smallest aperture size on the first such system located in the drain hole is a wire mesh basket.  The wire mesh basket filters sediment at a particle size in excess of 100 microns.  A graphic depiction of the wire mesh basket is shown below.



**Figure 12 – IO-200 Wire mesh screen filter basket.**

85.

The upstream filtration system on the IO-200 filters sediment at a particle size in excess of 100 microns.  A graphic depiction of the upstream filter on the IO-200 is shown below



**Figure 13 – IO-200 Upstream filter system.**

86.

Despite acquiring the Overland '147 Patent and entering into a consulting, marketing, and promotional arrangement with Mr. Overland, JWCL and JWI did not make any changes to the Bio-Circle model IO-200 and IO-400 parts washers being sold on the United States market to ensure that they were within the scope of the claims of the Overland '147 Patent.

87.

Beginning at or shortly after the time that JWCL and JWI obtained rights in the Overland '147 Patent, JWCL and JWI started marking at least the Bio-Circle IO-200 and IO-400 parts washers as being covered by the Overland '147 Patent.

88.

JWCL and JWI' 2007 product catalog indicates that Bio-Circle model IO-400 and IO-200 parts washers are covered by the Overland '147 Patent.  See Exhibit C" hereto

89.

At all pertinent times, JWCL and JWI knew that the filtration system disposed in the drain hole of the Bio-Circle model IO-400 parts washer only filtered sediment particles larger than about 100 microns in size.

90.

At all pertinent times, JWCL and JWI knew that the filtration system disposed in the drain hole of the Bio-Circle model IO-200 parts washer only filtered sediment particles larger than about 100 microns in size.

91.

At all pertinent times, JWCL and JWI knew that the Upstream filtration system disposed in the Bio-Circle model IO-400 parts washer only filtered sediment particles larger than about 100 microns in size.  Thus, JWCL and JWI had no reasonable belief

that their parts washers were properly marked as being covered by the Overland '147 Patent, which requires filtering down to at least 10 microns.

92.

JWCL and JWI have marked their Bio-Circle model IO-400 parts washer as being covered by the Overland '147 Patent, which requires filtering down to at or below 10 microns.  JWCL and JWI deliberately and intentionally did so with no reasonable belief that they were properly marking such parts washers as being covered by the Overland '147 Patent since they knew at the time that the IO-400 did not filter the cleaning fluid down to 10 microns as claimed in claims 1 and 4 of the Overland '147 Patent.

93.

At the time that JWCL and JWI marked the Bio-Circle model IO-400 parts washer as being covered by the Overland '147 Patent, they had full knowledge of the falsehood of such markings.

94.

At the time that JWCL and JWI marked the Bio-Circle model IO-400 parts washer as being covered by the Overland '147 Patent, they knew and understood that those that saw the Overland '147 Patent markings on the IO-400 would be misled into the false belief that the IO-400, in fact, actually practiced such patent as claimed therein.

95.

ChemFree, as a direct competitor in the parts washer market, has suffered a competitive injury caused by JWCL and JWI's false patent marking such that ChemFree is entitled money damages adequate to compensate it for such injury.

**COUNT V**

**<u>FALSE PATENT MARKING OF THE IO-200</u>**

96.

ChemFree repeats and incorporates by reference, as if fully restated herein, the averments set forth in paragraphs 1 – 95 hereinabove.

97.

JWCL and JWI have marked their Bio-Circle model IO-200 parts washer as being covered by the Overland '147 Patent, which requires filtering down to at or below 10 microns.  JWCL and JWI deliberately and intentionally did so with no reasonable belief that they were properly marking such parts washers as being covered by the Overland '147 Patent since they knew at the time that the IO-200 did not filter the cleaning fluid down to 10 microns as claimed in claims 1 and 4 of the Overland '147 Patent.

98.

At the time that JWCL and JWI marked the Bio-Circle model IO-200 parts washer as being covered by the Overland '147 Patent, they had full knowledge of the falsehood of such markings.

99.

At the time that JWCL and JWI marked the Bio-Circle model IO-200 parts washer as being covered by the Overland '147 Patent, they knew and understood that those that saw the Overland '147 Patent markings on the IO-200 would be misled into the false belief that the IO-200, in fact, actually practiced such patent as claimed therein.

100.

ChemFree, as a direct competitor in the parts washer market, has suffered a competitive injury caused by JWCL and JWI's false patent marking such that ChemFree is entitled money damages adequate to compensate it for such injury.

## COUNT VI

## EXCEPTIONAL CASE ATTORNEYS FEES

101.

ChemFree and ZYMO repeat and incorporate by reference, as if fully restated herein, the averments set forth in paragraphs 1-100 hereinabove.

102.

The circumstances surrounding JWCL and JWI's infringement, including, without limitation, the willfulness thereof, warrant a determination by the Court that this is an "exceptional case" within the meaning of 35 U.S.C. § 285 and further justifying an

award of ChemFree and ZYMO's attorneys fees and costs in pursuing this action.

103.

The circumstances surrounding JWCL and JWI's false patent marking of their products warrant a determination by the Court that this is an "exceptional case" within the meaning of 35 U.S.C. § 285 and further justifying an award of ChemFree and ZYMO's attorneys fees and costs in pursuing this action.

**COUNT VII**

**ENTITLEMENT TO INJUNCTIVE RELIEF**

104.

ChemFree and ZYMO repeat and incorporate by reference, as if fully restated herein, the averments set forth in paragraphs 1-103 hereinabove.

105.

JWCL and JWI's acts of infringement have caused irreparable harm to ChemFree and ZYMO.  ChemFree and ZYMO do not have an adequate remedy at law.  ChemFree and ZYMO will suffer additional and irreparable damages unless JWCL and JWI are enjoined preliminarily and permanently by this Court from continuing their infringement.

**JURY TRIAL DEMAND**

ChemFree and ZYMO hereby demand trial by jury as to all issues so triable in this action.

- 33 -

WHEREFORE, ChemFree and ZYMO pray:

(a) that JWCL and JWI be found to have infringed one or more claims of the '257 Patent;

(b) that the Court issue a preliminary and permanent injunction pursuant to 35 U.S.C. § 283 against the continuing infringements of the claims of the '257 Patent by JWCL and JWI, and their respective officers, agents, employees, attorneys, representatives, and all others acting in concert therewith;

(c) that the Court award money damages in favor of ChemFree and ZYMO and against JWCL and JWI adequate to compensate ChemFree and ZYMO for JWCL and JWI's infringement in accordance with applicable law including 35 U.S.C. § 284;

(d) that the Court award reasonable royalty damages in favor of ChemFree and ZYMO and against JWCL and JWI on account of JWCL and JWI pre-issuance infringement following receipt of the March 24 notice;

(e) that the Court award money damages sufficient to compensate ChemFree and ZYMO for the competitive injury they have suffered attributable to JWCL and JWI's false patent marking;

(f) that the Court award ChemFree and ZYMO prejudgment interest and costs pursuant to 35 U.S.C. § 284;

(g) that the Court increase the damages assessed against JWCL and JWI to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

(h) that the Court declare this an exceptional case and order that JWCL and JWI pay to ChemFree its reasonable attorneys' fees and costs, pursuant to 35 U.S.C. § 285; and

(i) that the Court award such further and other relief to ChemFree and ZYMO as the Court deems just and equitable, together with its costs and disbursements in this action.

Respectfully submitted, this 29th day of September, 2011.

DUANE MORRIS LLP

/s/ *William A. Capp*
William A. Capp
Georgia Bar No. 108823
*bcapp@duanemorris.com*

700 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 253-6975
Facsimile:  (404) 253-6901

Counsel for Plaintiffs
  ChemFree Corporation &
  ZYMO International, Inc.

> In accordance with Local Rule 7.1D, counsel for Plaintiff certifies that the foregoing has been prepared using the font Courier New 12 point.