**IN THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| CHEMFREE CORPORATION, and ZYMO INTERNATIONAL, INC. <br><br> Plaintiffs, <br><br> v. <br><br> J. WALTER, INC., and J. WALTER COMPANY, LTD., <br><br> Defendants. | Civil Action No. 1:11-cv-03333-RWS |

**DEFENDANTS J. WALTER, INC. AND J. WALTER COMPANY, LTD.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO ENJOIN IOWA ACTION**

TABLE OF CONTENTS

I.   FACTUAL BACKGROUND ..............................................................................3

   A.   Plaintiffs' "Invention," Their Patents and the Prior Art ..........................5

   B.   The First (2004) Action and Judge Wolle's Participation ........................7

      1.   Bench trial before Judge Camp ..................................................8

      2.   Judge Wolle's designation as successor Judge ..........................................8

         a.   Judge Wolle's Study and Preparation ....................................................9

         b.   Judge Wolle's Additional Efforts in the First Action ..........................10

         c.   Status of the Appeal ............................................................................10

      3.   ChemFree's Efforts to Have the First Action Assigned to Judge Forrester ..................................................................................................11

   C.   Chronology and the Nature of the Iowa and Atlanta Actions ..........12

      1.   Chronology ................................................................................12

      2.   Nature of the actions ................................................................12

      3.   Pending motions ........................................................................13

II.   ARGUMENT AND CITATION TO AUTHORITIES ....................................13

A.   THE IOWA COURT SHOULD DECIDED WHICH ACTION PROCEEDS..........................13

   1.   ChemFree conceded the Iowa Action was first filed................................13

   2.   The newly filed actions, not an earlier action directed to different patents
        control, the first-filed analysis..................................................15

B.   AN INJUNCTION IS IMPROPER BECAUSE JUDICIAL INTERESTS COMPEL
     DISMISSAL OF THIS ACTION ...........................................................................15

C.   WALTER'S MOTION TO DISMISS TOLLED THE TIME TO ANSWER ..........................19

   1.   A First-to-File motion is a Rule 12(b)(6) motion ....................................19

III.   CONCLUSION.................................................................................................23

TABLE OF AUTHORITIES

<u>CASES</u>

*Brooks v. D.S.S. Chappius*, 2006 U.S. Dist. LEXIS 8821 (W.D.N.Y. Mar. 1, 2006) ....................................................................................................................22

*Century Furniture, LLC v. C & C Imps., Inc.,* 2007 U.S. Dist. LEXIS 68343 (W.D.N.C. Sept. 14, 2007)...................................................................................20

*In re KJK Constr. Co., Inc. v. Rieger*, 414 B.R. 416 (Bankr. Ct. ND Ill. 2009) .....21

*In re Verzion Business Network Services, Inc.,* 635 F.3d 559 (Fed Cir. 2011).......17

*In re Vistaprint*, 628 F.3d 1342 (Fed. Cir. 2010)....................................................16

*Johnson v. Warner*, 2009 U.S. Dist. LEXIS 17143 (W.D. Va. Mar. 6, 2009)........21

*Kinetic Concepts, Inc. v. BlueSky Medical Group, Inc.,* No. 2:07-cv-188; 2008 U.S. Dist. LEXIS 2900 (E.D. Tex. Jan. 14, 2008)......................................................18

*Laboratory Corp. v. Chiron Corp.,* 384 F.3d 1326 (Fed. Cir.  2004) .....................15

*Mann v. Lee*, 2009 U.S. Dist. LEXIS 119744 (N.D. Cal. Dec. 22, 2009)...............21

*Marquez v. Cable One, Inc*., 463 F.3d 1118 (10th Cir. 2006)................................21

*Martin v. South Carolina Bank,* 811 F. Supp. 679, 686 (M.D. Ga. 1992) ..............18

*Proofpoint, Inc. v. InNova Patent Licensing, LLC,* No. 5:11-cv-2288; 2011 U.S. Dist. LEXIS 120343 (N.D. CA. Oct. 17, 2011)...................................................18

*Quad/Tech, Inc. v. Q.I. Press Controls,* 2010 U.S. Dist. LEXIS 121063 (N.D. Cal. Nov. 15, 2010) ....................................................................................20

*Rashidi v. Albright*, 818 F. Supp. 1354 (D. Nev. 1993) ..........................................22

*SAS Inst., Inc. v. PracticingSmarter, Inc.*, 353 F. Supp. 2d 614 (M.D.N.C. 2005).20

*Unique Indus., Inc. v. Lisa Frank, Inc.*, No. 93-8037, 1994 WL 525041 (S.D.N.Y. Sept. 23, 1994) ....................................................................................20

## STATUTES

28 U.S.C. § 1404(a) .................................................................................17

## RULES

Fed. R. Civ. P. 3 .....................................................................................15

Fed. R. Civ. P. 12(b) ...............................................................................20

Fed. R. Civ. P. 55 ...................................................................................22

Local Rule 5.1 (K) ...................................................................................16

## TREATISES

Moore's Federal Practice § 55.11 [2][b][i].................................................21

Moore's Federal Practice § 56.62 ............................................................21

Since the Iowa Court was the Court first joined with the parties' dispute regarding the recently issued '257 Patent, it is the appropriate Court to determine which of the two actions should proceed. Concerns of, *inter alia,* judicial efficiency dictate that this dispute should proceed in Iowa. Accordingly, the Court should deny Plaintiffs' Motion to Enjoin the Iowa Action.

Plaintiffs ChemFree Corporation ("ChemFree") and ZYMO International, Inc. ("ZYMO") struggle in their argument that the 2004 Georgia case,[1] which is presently on appeal, is the "first-filed" action. The First (2004) Action involved Plaintiffs' four "Old Patents" [Dkt. No. 8 at 18[2]]. Following a week-long trial, Judge Camp found these Old Patents invalid as obvious under 35 U.S.C. §103. *See* Exhibit A, Dkt. (04-3711) No. 619, Order. After an exhaustive, effectively *de novo* review, Judge Wolle confirmed the invalidity of ChemFree's "Old Patents." *See* Exhibit B, Dkt. (04-3711) No. 685, Rulings Denying Post-Judgment Motions and Directing Entry of Judgment. The Plaintiffs' '257 Patent is a "New Patent" [Dkt. No. 8 at 19]. While Chemfree's '257 Patent is invalid in view of the same prior art and for many of the same reasons as Chemfree's "Old Patents," that does

---

[1] In its prior brief, Walter referred to this case as the "First Action." For clarity here, Walter will refer to this case as the "First (2004) Action."
[2] Walter references the docket of the instant Action as "Dkt. No." For all other actions, Walter references the Case Number along with the docket number: *e.g.,* "Dkt. (04-3711) No."

not mean that the First (2004) Action is the first-filed action.  Instead, the Iowa

Action, filed before the instant Action, is the first-filed action pertaining to the

parties' dispute over Plaintiffs' new '257 Patent.

In Iowa, ChemFree essentially admitted that the Iowa Action is the first filed

action.  *See* Exhibit C, ChemFree's Motion to Dismiss or Transfer, at 12-13

(arguing that the court should not be concerned with who won "the race to the

courthouse") and 16 (arguing that other exceptions to the first-to-file rule should

apply).  In Georgia, Plaintiffs did not designate the instant case as "related" to the

First (2004) Action.  *See* Dkt. No. 1-2 (Civil Cover Sheet). The Plaintiffs' actions,

both here and in Iowa, confirm that the Iowa Action is "first filed."

Plaintiffs cite no authority that a dispute over which action was first filed

should be based on a separate action involving different patents.  Plaintiffs'

strained attempt to classify the First (2004) Action as first-filed is fatally flawed

and misapplies the rule.  Plaintiffs' newly-found theory is nothing more than an

attempt to have yet another new judge preside over this Action after failing in its

attempts to enforce patents directed to the same invention before Judge Camp and

his successor, Judge Wolle.  ChemFree seeks, in effect, a third bite at the judicial

apple.

Finally, Plaintiffs' argument that Defendants' Motion to Dismiss did not act

to toll the time to Answer is without merit.  Defendants' Motion to Dismiss under the well-established first-to-file rule was proper under Federal Rule of Civil Procedure 12(b)(6).  Regardless, Defendants "otherwise defended" under Federal Rule of Civil Procedure 55.

## I.    FACTUAL BACKGROUND

Plaintiffs' so-called "statement of the facts"[3] seeks to try this dispute on the merits before the proper venue has even been decided.  Sounding much like an opening argument at trial, Plaintiffs maintain that "the evidence at trial will establish" various issues of disputed fact.[4]  *See* Dkt. No. 8 at 3, 4. Defendants dispute such conclusory allegations and will make a complete evidentiary showing at the appropriate time.  The following three examples are, however, particularly noteworthy.

First, ChemFree <u>was</u> <u>not</u> the first to successfully develop a practical, functioning bioremediation parts washer.  *See* Section I(A) infra.

---

[3] Plaintiffs did not file a memorandum in support of their Motion to Enjoin, but cited their Opposition to Defendants' Motion to Dismiss in support of their Motion.  *See* Dkt. 9 at ¶ 22.  Accordingly, Defendants respond to the facts set forth in Plaintiffs' Motion as well as the cited Opposition.

[4] Plaintiffs' "the evidence will establish" arguments stand in contrast to Plaintiffs' earlier criticism that Walter's Motion was "unaccompanied by affidavits or other materials of an evidentiary nature."  Dkt. No. 8 at 1.  Plaintiffs' criticism is without merit. Walter relied on facts contained in the judicial record of the First (2004) Action, citing Civil Action No. 04-3711 docket entries.  Hence no affidavits were needed.

Second, Walter did not "copy" ChemFree's technology.  *See* Exhibit A at 11; Exhibit D, Trial Transcript (Schudle), at 470:3-10; 471:9-473:2; 473:13-474:8. ChemFree's parts washers deliver microorganisms to the cleaning fluid by means of a filter pad laden with microbes.  As the cleaning fluid passes through the filter, microorganisms are introduced into the fluid.  In contrast, Walter worked with a partner (CB Chemie) to develop a new fluid that already contained, and sustained, the microorganisms.  *Id.* at 470:2-10, 21-23.  Unlike ChemFree, Walter does not introduce microorganisms to the fluid by means of a filter. *Id.* at 470:2-10, 21-23; 473:20-474:3.  Walter independently developed its technology.

Third, Plaintiffs continue to attempt to impute bad acts to Walter and its current counsel.  Dkt. No. 8 at 4.  Plaintiffs ignore, however, that Rule 11 sanctions were not imposed on Walter or its current counsel, but rather, on (and only on) prior counsel.  Exhibit E, Dkt. (04-3711) No. 366, Order.  Rather, Judge Camp explicitly urged ChemFree to cease such personal accusations:  "The Court cautions Plaintiff's counsel to refrain from making further inflammatory comments and personal attacks against Defendants, Defendants' counsel and Defendants' witnesses."  Exhibit F, Dkt. (04-3711) No. 415 at 6.

At this stage the most relevant facts here are as follows: (1) Judge Camp found all asserted claims of ChemFree's "Old Patent" invalid; (2) as the successor

4

judge, Judge Wolle conducted a thorough, independent review of the record (and certified his familiarity with the record as requested by ChemFree); (3) Judge Wolle held that there was "no sound basis for changing any part of Judge Camp's well reasoned order . . . .;" (4) Walter initiated the "first filed" declaratory judgment action in Iowa based on ChemFree's assertion of its new '257 Patent, which is directed to the same invention as ChemFree's "Old [invalid] Patents;" (5) Plaintiffs' conclusory allegations notwithstanding, ChemFree and ZYMO conduct regular business in Iowa; and (6) any alleged inconvenience is outweighed by the benefit and concerns of judicial economy and efficiency.

### A. Plaintiffs' "Invention," Their Patents and the Prior Art

ChemFree and ZYMO are co-owners of a number of patents, including the patent-in-suit, U.S. Patent No. 7,890,257 (the "'257 Patent"), and the "Old Patents: U.S. Patent No. 6,019,110 (the "'110 Patent"), U.S. Patent No. 6,074,491 (the "'491 Patent"), U.S. Patent No. 6,374,835 (the "'835 Patent"), U.S. Patent No. 6,451,125 (the "'125 Patent"), U.S. Patent No. 6,440,226 (the "'226 Patent."). These patents all derive from a common parent patent application and all are directed to a bioremediating parts washing system and methods of use.  The '257 Patent is just the latest in the list of substantially similar patents ChemFree has obtained on its alleged invention.  As one indication, the Patent Examiner required

that Plaintiffs file a "terminal disclaimer" [5] before issuing the '257 patent.[6]

Plaintiffs necessarily admit the existence and relevance of publicly available European references disclosing bioremediating parts washers.  Plaintiffs, however, argue that "it is undisputed that no one successfully commercialized a practical, functioning bioremediation parts washer before Plaintiffs."  Dkt. No. 8 at 2.  This argument ignores critical evidence.

A functioning bioremediating parts washer was available to the public prior to ChemFree's alleged invention in 1994.  *See* Exhibit G, Declaration of William Lashmett and Exhibit H, Declaration of Brent Lashmett.  This bioremediating parts washer used the basic sink-on-a-drum design.  *See* Exhibit G at ¶¶ 20-23; Exhibit H at ¶¶ 14-17.  The cleaning fluid included a soap (*e.g.,* a "surfactant") and

---

[5] A terminal disclaimer disclaims the portion of the term of a second related patent which extends beyond the expiration of a first issued patent.  Terminal disclaimers are typically filed to remove rejections based on obvious-type double patenting.  While the terminal disclaimer cannot be used as an admission to show that a second patent is obvious in view of the first patent (*Quad Environmental Technologies, Corp. v. Union Sanitary Dist.,* 946 F.2d 870, 874 (Fed. Cir. 1991)) it is certainly indicative of the relatedness of the '257 Patent to the '110 Patent.

[6] When asserting that the claims of the '257 Patent "should readily withstand Walter's invalidity challenge," Plaintiffs highlight the difference in scope of the claims of the '257 Patent.  (Dkt. No. 8 at 3 ("all 20 claims of the '257 Patent are different in scope than the claims that . . . have been held invalid in Case 04-3711.")).  When discussing infringement, however, Plaintiffs assert that Walter's products infringe the '257 Patent "for the same reasons" that they infringe the patents in the First Action.  Dkt. No. 8 at 4.

bioremediating microorganisms (of at least the genera Bacillus).  *See* Exhibit G at ¶¶ 24-28; Exhibit H at ¶¶ 6, 21, 24-25.  The parts washer was publically available.  *See* Exhibit G at ¶¶ 29-31; Exhibit H at ¶¶ 24, 27-30.[7]  Thus, bioremediating parts washers were known both in Europe and United States before Plaintiffs' alleged invention.[8]

### B. The First (2004) Action and Judge Wolle's Participation

In 2004, ChemFree (but not ZYMO, who waived its right to join in the action) sued Walter for infringement of the Old Patents: the '110, '491, '835, '125 and '226 Patents.[9]  Based on a subset of the prior art,[10] Judge Camp held that Walter had proven by clear and convincing evidence that all of the asserted claims were invalid as obvious. *See* Exhibit A.  While the references relied upon by Judge Camp (and Judge Wolle) will be relied on again in this Action, Walter will offer additional prior art, including the prior public use in Minnesota, in addition to that

---

[7] *See* also Exhibit I at ¶ 49, Declaration of Glen Knowlton, describing a February, 1992 Agreement to supply a "hydrocarbon bioremediation system" for cleaning parts such as transformers.

[8] Despite its awareness of the referenced Declarations, ChemFree asserted in the First (2004) Action that its bioremediating parts washer was the first.

[9] After discovery, ChemFree withdrew its allegations of infringement of the '491 Patent in the First (2004) Action.

[10] As a result of certain exclusionary orders, Walter could not rely on certain prior art, including the declarations at Exhibits G and H.

which both Judge Camp and Judge Wolle found was sufficient to establish

invalidity by the clear and convincing standard of proof.  Thus, the '257 Patent

involves other issues even if the Federal Circuit remands the First (2004) Action.

### 1.  Bench trial before Judge Camp

The First (2004) Action was tried before Judge Camp without a jury.  In a

June 18, 2010 Order, Judge Camp entered findings of fact and conclusions of law

ruling that all asserted claims were invalid for obviousness under 35 U.S.C. § 103.

*See* Exhibit A.  Judge Camp resigned from the bench on November 19, 2010

before hearing or deciding ChemFree's various post-trial motions.

### 2.  Judge Wolle's designation as successor Judge

On December 23, 2010, Judge Wolle of the Southern District of Iowa

succeeded Judge Camp by intercircuit assignment.  *See* Exhibit J, Dkt. (0403711)

No. 654, Designation and Assignment of a Senior United States Judge for Service

in Another District.  Thereafter, Judge Wolle presided over the First (2004) Action

and entered the last Order in that Action on October 17, 2011.  S*ee* Dkt. (04-3711)

No. 704,[11] Order granting Motion to Correct Computation Error In Order

Modifying Clerk's Taxation of Costs.  Walter understands that Judge Wolle will

---

[11] Walter has attached the most relevant docket entries from the First Action as
Exhibits, but to spare the Court an inundation of paper previously filed, it
references the appropriate Docket Number from the First Action.

continue to preside over the First (2004) Action should it be remanded as a result
of the appeal to the Federal Circuit.

### a.   Judge Wolle's Study and Preparation

Judge Wolle has invested substantial time and effort in familiarizing himself
with the parties, technology and issues in the First (2004) Action.  In fact,
ChemFree expressly requested that Judge Wolle certify familiarity with an
extensive record.  *See* Dkt. (04-3711) No. 658.  ChemFree sought permission to
recall a fact witness.  *See* Dkt. (04-3711) No. 657.  Judge Wolle, after a conference
with counsel for the parties, permitted additional discovery and allowed the parties
to freely designate the record for review.  The parties designated extensively.  *See*
Dkt. (04-3711) Nos. 667, 668, 669, 670.  Based on those designations, Judge
Wolle reviewed, read and analyzed the First Action case file, encompassing over
four years of litigation.

After completing his review, Judge Wolle expressly stated that he studied
"all material designated by the parties, including pretrial motions and rulings, the
entire trial transcript, lengthy briefs, and the proposed decisions filed by the parties
before and after the bench trial."  *See* Exhibit B at 4.  Judge Wolle characterized
his task as successor Judge as "heavy" as it required reviewing "thousands of pages
within many hundreds of docket entries pleadings, briefs and pretrial rulings."  *Id.*

9

Judge Wolle further stated that becoming familiar with the record, including trial transcript and exhibits, "required several months of focused attention."  Once finished, Judge Wolle certified "complete familiarity with the record" pursuant to Federal Rule of Civil Procedure 63. *Id.* at 2, n. 2.

### b.   Judge Wolle's Additional Efforts in the First Action

In addition to reviewing the extensive written record and the trial transcript, Judge Wolle also held a full-day hearing to receive additional evidence and arguments.  *Id.* at 3.  Specifically, Judge Wolle heard testimony from one of the named inventors, Tom McNally.  *Id.*  Only after this substantial investment in time and resources did Judge Wolle decide the various post-trial motions in the First Action.  *See id.* at 2, 4.  In that decision, Judge Wolle concluded that "the trial judge as finder of fact applied the correct measure of proof and set forth in sufficient detail facts supporting the conclusion that Walter had satisfied that heavy burden" of proving the asserted claims were invalid.  *See id.* at 7.  Judge Wolle specifically found "no sound basis for changing any part of Judge Camp's well-reasoned order entered on June 18, 2010." *Id.*

### c.   Status of the Appeal

The First Action is on appeal at the Federal Circuit (Appeal No. 2011-1496). The parties are currently briefing the merits.

### 3. ChemFree's Efforts to Have the First Action Assigned to Judge Forrester

ChemFree twice tried to have the First Action heard by Judge Forrester on the grounds that it was related to the 2001 McClure Action.[12]  *See* Exhibit K, Dkt. (04-3711) 21, Notice of Substantially Related Case, and Exhibit L Dkt. (04-3711) 646, Notice of Substantially Related Case.  ChemFree initially argued that the First (2004) Action should be assigned to Judge Forrester.  Exhibit K.  Judge Camp effectively denied this request by retaining jurisdiction of the First (2004) Action. ChemFree tried again in 2010 near the time of Judge Camp's resignation.  *See* Exhibit L.  The case was instead assigned to Judge Wolle. *See* Exhibit J.

The McClure Action is not sufficiently related to the First (2004) Action or the '257 Patent dispute to warrant assigning the instant Action to Judge Forrester. The McClure Action was primarily a contract and inventorship dispute resolved by a "Consent Order and Judgment" before ChemFree filed the First (2004) Action. The McClure action did <u>not</u> address any issue of alleged infringement by Walter. The McClure Action did <u>not</u> address validity in view of Walter's prior art submissions.  In contrast, obviousness in view of a subset of the prior art was the <u>primary issue addressed</u> by Judge Camp and Judge Wolle in the First (2004)

---

[12] *ChemFree Corp. v. McClure,* No. 00-1530 (ND Ga.).

Action.  Judge Forrester has no detailed experience with such key prior art references or any experience with Walter's accused products.  Judge Wolle has knowledge of both.

### C. Chronology and the Nature of the Iowa and Atlanta Actions

#### 1.  Chronology

On September 23, 2011, Walter filed its declaratory judgment action in the Southern District of Iowa to put an end to ChemFree's unjustified and incorrect assertions that Walter's bioremediating parts washer technology infringes any valid claim of the '257 Patent and to silence ChemFree's threats to sue Walter.  In the Iowa Action, Walter alleges that the '257 Patent is directed to the same invention as asserted in the First Action and addressed by Judge Wolle.

Apparently in retaliation and in an effort to avoid Judge Wolle, ChemFree filed this Action.  ChemFree did not list either the First Action or the McClure Action as "related cases" on the Civil Cover Sheet.  *See* Dkt. No. 1-2.  Indeed, ChemFree does not mention the First Action in its Complaint.  *See* Dkt. No. 1.

#### 2.  Nature of the actions

There does not appear to be any dispute between the parties that this Action and the Iowa Action are essentially identical.  *See* Dkt. No. 8 at 14-15.  Further, despite their initial reluctance to associate this Action with the First Action,

12

Plaintiffs now admit that they involve common issues of fact and law.  *Id.* at 15.

### 3.  Pending motions

In this Action, Walter filed a Motion to Dismiss, Stay or Transfer on October 24, 2011.  Plaintiffs' opposed on October 28, 2011 and filed the instant Motion to Enjoin that same day.

In the Iowa Action, ChemFree moved to dismiss the action on October 21, 2011.  Walter moved in Iowa to enjoin this Action on October 24, 2011 and opposed ChemFree's motion to dismiss on November 7, 2011.  Also on November 7, Walter filed an Amended Complaint in Iowa adding ZYMO as a defendant. Judge Wolle will conduct a hearing on all motions in the Iowa Action on November 22, 2011.

## II.  ARGUMENT AND CITATION TO AUTHORITIES

Plaintiffs agree that the Court that first takes possession of a dispute should decide the first-to-file issue.  However, in a departure from their earlier argument in Iowa, Plaintiffs now contend that the First (2004) Action regarding ChemFree's "Old Patents" is the first-filed suit.

### A.  The Iowa Court Should Decided Which Action Proceeds

#### 1.  ChemFree conceded the Iowa Action was first filed

The Iowa Action was filed on September 23, 2011.  It was not until

September 29, 2011, nearly a week later, that ChemFree filed this Action.

Accordingly, Walter submits that the determination of which action was first-filed

is straight forward. Indeed, it was not until October 28 that ChemFree asserted that

the determination was anything but straight forward. *Compare* Exhibit C,

ChemFree's Oct. 21, 2011 Brief in Support, at 12-13 and Dkt. No. 8 at 13.

Plaintiffs' current argument that the First (2004) Action is the first-filed

action is a transparent attempt to avoid Judge Wolle. Neither the Complaint nor

the Civil Cover Sheet asserts that this Action is related to the First (2004) Action:

both are completely silent on the issue. Even after arguing that the filing date of

the First (2004) Action controls the first-to-file-question, Plaintiffs will not commit

to requesting consolidation. Rather, they assert that "ChemFree may, and likely

will" seek consolidation. Dkt. No. 8 at 17. It is readily apparent that Plaintiffs'

true purpose in filing in Georgia rather than proceeding in Iowa is not judicial

efficiency but rather avoidance of Judge Wolle.

Plaintiffs only argued that they were first-filed after receiving abundant legal

authority (set-forth in Walter's Motion to Enjoin filed in the Iowa Action and its

Motion to Dismiss filed in this Action) that (1) the Iowa Court should decide

where the action should proceed and (2) that the totality of the circumstances

compel litigating in the first-filed venue. *See* Exhibit M and Dkt. No. 7. That

14

argument is wholly absent from ChemFree's Motion to Dismiss the Iowa Action

filed before Walter filed its motions in Iowa and this Court.  *See* Exhibit C.

### 2. The first-to-file analysis addresses the newly filed '257 Patent disputes, not an earlier action directed to different patents

The first to file analysis addresses parallel actions such as "co-pending

patent infringement and declaratory judgment actions involving the <u>same patents</u>

and the same parties."  *Laboratory Corp. v. Chiron Corp.,* 384 F.3d 1326, 1330

(Fed. Cir.  2004) (emphasis added). While this Action and the Iowa Action involve

facts and law in common with the First (2004) Action, this Action and the Iowa

Action involve only the '257 Patent.  This Action is, therefore, a new action, with

its own civil action number.  *See* Federal Rule of Civil Procedure 3 ("A civil action

is commenced by filing a complaint with the court."); L.R. 5.1 (K) (Civil Action

Numbers: "A civil case filed in this court shall be assigned a case number which

will identify it as a civil case, designate the division, the year, and the numerical

sequence in which the case was filed  . . . .").  Plaintiffs made no attempt to amend

their Complaint in the First (2004) Action to add the '257 Patent.

### B.   An Injunction is Improper Because Judicial Interests Compel Dismissal of this Action

While this Court is fully competent and able to preside over this case, it is,

respectfully, not an efficient use of judicial resources given Judge Wolle's

familiarity with the record in First (2004) Action.  The Federal Circuit has recognized significant judicial economies by having the same judge preside over related subject matter and similar cases.  *See e.g., In re Vistaprint*, 628 F.3d 1342, 1346-47 (Fed. Cir. 2010); *see also Kinetic Concepts,* 2008 U.S. Dist. LEXIS 2900 at *5-6.  Ordinarily, such cases would be litigated in the same venue.  Judge Camp's resignation and Judge Wolle's appointment to succeed him in the First (2004) Action, however, effect that analysis.  Regardless, the benefit of such significant judicial economies in this case outweighs other factors.

While Plaintiffs agree that the Iowa Action and the instant Action are so similar that they should be litigated together, Plaintiffs miss the point by sacrificing judicial efficiency in having the same judge preside over both matters.  Plaintiffs admit that the efficiencies in having a court familiar with a pending related case "may be more important" than the factors set forth in 28 U.S.C. § 1404(a) and that the presence of a related case may be "powerful enough to tilt the balance" even when convenience of the parties might favor a different venue (*see* Dkt. No. 8 at 18 (citations omitted)), but argue that the parties and the court should start anew, with yet another judge, because Georgia is more convenient for ChemFree.  That analysis ignores the declaratory judgment plaintiff's right to select an appropriate forum and the rational behind the first-to-file rule.

16

There is no efficiency if the same judge is not involved or if there is a substantial amount of time between the cases.  With reference to time, the Federal Circuit recognized in *In re Verzion Business Network Services, Inc.,* 635 F.3d 559, 562 (Fed Cir. 2011) that five years between a prior litigation and a current litigation (with intervening reexamination) can be too long for judicial efficiency to be preserved.

With reference to the judge, cases discussing related co-pending litigation as a factor to consider when deciding where a case should proceed explicitly recognize that it is the <u>judge's</u> familiarity with a case that is important.  Otherwise, there would be no efficiency to be gained.  For example, in *Proofpoint, Inc. v. InNova Patent Licensing, LLC,* No. 5:11-cv-2288; 2011 U.S. Dist. LEXIS 120343, *19-22 (N.D. CA. Oct. 17, 2011), the court focused on the <u>judge's</u> efforts in the prior litigation and encouraged the plaintiff "to move to intervene in the Texas Action or bring a separate action for declaratory judgment in the Eastern District of Texas and seek to relate that claim to the Texas Action."  *Id.* at *23.  In *Kinetic Concepts*, after observing the the patents-in-suit and those in the prior litigation had the same specification, the court transferred the case holding that:

> Judge Ferguson has substantial experience with these parties and has invested time and effort in learning the technology at issue in the case. Judicial economy therefore supports the transfer of this action . . . .

17

*Kinetic Concepts, Inc. v. BlueSky Medical Group, Inc.,* No. 2:07-cv-188; 2008 U.S. Dist. LEXIS 2900, *6 (E.D. Tex. Jan. 14, 2008).  Similarly, in *Vistaprint,* the Federal circuit explicitly found that "[h]aving the same magistrate judge handle this and the co-pending case involving the same patent would be more efficient than requiring another magistrate or trial judge to start from scratch.").  628 F.3d at 1344.

In *Martin,* a case cited by Plaintiffs, the court specifically found that the Alabama judge was in a better position to decide the issues because of that judge's familiarity with parties and issues, referencing the presiding judge by name. *Martin v. South Carolina Bank,* 811 F. Supp. 679, 686 (M.D. Ga. 1992). Transferring the *Martin* case to the Alabama court for assignment to a different judge would have defeated the whole purpose behind the Georgia court's decision. Obviously, the efficiency gained is not simply by litigating in the same venue, but in having the same judge preside over related cases.

Seemingly acknowledging that the judge's previous experience with a case is the relevant issue – not venue in general – Plaintiffs argue that Judge Forrester has more experience with the issues in this case than Judge Wolle.  But Judge Forrester is not familiar with any of the prior art that is likely to be at issue in this case, while Judge Wolle is.  Moreover, it is Judge Wolle, not Judge Forrester, who

has gained familiarity with Walter's products that are accused of infringing the

'257 patent.  Judge Wolle is also familiar with claim construction of one of the key

terms in the patent as ChemFree raised a *Markman* issue in its post-trial motions.

Finally, Judge Forrester's experience with substantive matters related to the

invention at issue ended in 2004 when the McClure Action settled.  All Judge

Forrester has presided over recently are enforcement issues.  Judge Wolle's

knowledge is both more extensive and more current.

### C.   Walter's Motion to Dismiss Tolled the Time to Answer

Plaintiffs argue that Walter is "technically in default for failure to either

timely Answer the Complaint or present a proper motion within the lawful scope of

Fed.R.Civ.P. 12(b)."  Dkt. No. 9 at 6, ¶ 18.  This argument is without merit.

Walter's Motion to Dismiss is a proper Rule 12(b) motion and fully sufficient

under Rule 55.

### 1.  A First-to-File motion is a Rule 12(b)(6) motion

Plaintiffs acknowledge that Walter cited authority in its Motion to Dismiss

that a first-to-file motion is properly considered a Rule 12(b)(6) motion.

Specifically, Walter stated:

> Rule 12(b)(6) dismissal motions are an appropriate means to raise
> "first-to-file" principles. *SAS Inst., Inc. v. PracticingSmarter, Inc.*, 353
> F. Supp. 2d 614, 616 & 620 (M.D.N.C. 2005) (granting Rule 12(b)(6)
> dismissal motion on "first-to-file" ground); *c.f. Unique Indus., Inc. v.*

> *Lisa Frank, Inc.*, No. 93-8037, 1994 WL 525041, at *1 (S.D.N.Y. Sept. 23, 1994) (courts have addressed which suit should be given precedence "under a variety of rubrics," including Rule 12(b) motions.).

Dkt. No.  7 at 13 fn. 6.  Thus, Walter is <u>not</u> in default – "technically" or otherwise.

Plaintiffs cite no case to the contrary.  Walter, in contrast, cites the above, as well

as *Quad/Tech, Inc. v. Q.I. Press Controls,* 2010 U.S. Dist. LEXIS 121063 (N.D.

Cal. Nov. 15, 2010) (transferring action and granting motion to dismiss under

Rule12(b)(6) based on first-to-file rule) and *Century Furniture, LLC v. C & C*

*Imps., Inc.,* 2007 U.S. Dist. LEXIS 68343, 3-4 (W.D.N.C. Sept. 14, 2007)

(granting first-to-file motion under Rule 12(b)(3) and 12(b)(6)).

Further, Rule 55 of the Federal Rules of Civil Procedure provides that a

party is <u>not</u> in default if it "answers or otherwise defends."  Fed. R. Civ. P. 55.

While the term "otherwise defend" is not separately defined,

> [I]t is generally understood to include not only an answer, but also preliminary motions that indicate the party's intention to defend actively against the suit, <u>such as motions to dismiss</u> or motions  for summary judgment. *See* 10 James Wm. Moore, et al., Moore's Federal Practice § 55.11 [2][b][i] (3d ed. 2008) (citing cases).

*Johnson v. Warner*, 2009 U.S. Dist. LEXIS 17143, *10-11 (W.D. Va. Mar. 6,

2009)(emphasis added).  Defendants' motion to dismiss constitutes a proper

"defending" against ChemFree's Complaint in this Action.

Numerous courts have addressed the applicability of the Rule 12(a)(4)

20

postponement of the duty to answer when a summary judgment motion, rather than a Rule 12(b)(6) motion is filed. "Virtually all" have found that the filing of a summary judgment motion constitutes "otherwise defending" under Rule 55. Moore's Federal Practice – Civil § 56.62 (citations omitted).  *See, also, Marquez v. Cable One, Inc*., 463 F.3d 1118, 1120-1121 (10th Cir. 2006) (tolling effect of Fed. R. Civ. P. 12(a) applied to motion that began as Fed. R. Civ. P. 12(b)(6) motion to dismiss and was converted to summary judgment motion); *In re KJK Constr. Co., Inc. v. Rieger*, 414 B.R. 416, 422 n. 3 (Bankr. Ct. ND Ill. 2009) ("Court will extend the benefit of the Rule 12(a) language tolling the time in which answers must be filed" to summary judgment motions); *Mann v. Lee*, 2009 U.S. Dist. LEXIS 119744, at *5-7 (N.D. Cal. Dec. 22, 2009) (noting support for extending tolling effect of Fed. R. Civ. P. 12(a) to summary judgment motion, court extended time for defendants to answer until after summary judgment motion decided); *Brooks v. D.S.S. Chappius*, 2006 U.S. Dist. LEXIS 8821, at *2 (W.D.N.Y. Mar. 1, 2006) (no default under Fed. R. Civ. P. 55(a) because summary judgment motion, like a Fed. R. Civ. P. 12 motion, shows that defendant has appeared and will "otherwise defend" against claims of pleading); *Rashidi v. Albright*, 818 F. Supp. 1354, 1356 (D. Nev. 1993).

As the *Johnson* court noted, the rationale behind these cases is simple: the

21

defendant has appeared to defend the case and, consequently, the time should be tolled.  *Johnson v. Warner*, 2009 U.S. Dist. LEXIS 17143at *10-11.

> [C]learly a summary judgment motion which speaks to the merits of the case and demonstrates a concerted effort and an undeniable desire to contest the action is sufficient to fall within the ambit of 'otherwise defend' for purposes of Fed. R. Civ. P. 55

*Rashidi* , 818 F. Supp. 1354, 1356 (D. Nev. 1993).

The same is true here.  By filing its motion to dismiss asserting that the Iowa Action (for declaratory judgment that the '257 patent is invalid) as the first-filed case should proceed instead of this Action (alleging infringement of the same '257 patent), Walter demonstrated a "concerted effort and an undeniable desire to contest" this action.[13]  *Id.*

If this case should continue, Walter will, of course, file an Answer within the appropriate time frame.  Until its proper motion to dismiss under Rule 12(b)(6) is decided, however, the time to Answer is tolled.  The Court should, therefore, deny Plaintiffs' invitation for it to "direct Defendants to file an Answer to the Complaint forthwith on pain of suffering judgment of default."  Dkt. No.  9 at 8.

---

[13] In fact, as noted by Moore's Federal Practice, the filing of Walter's Motion to dismiss prevents the Clerk from entering default under Rule 55.  *See* Moore's Federal Practice - Civil § 56.62.

22

## III.   CONCLUSION

For the foregoing reasons, Walter respectfully requests that this Court deny

Plaintiffs' Motion to Enjoin the Iowa Action.

Respectfully submitted,

McKeon, Meunier, Carlin & Curfman, LLC

*/s/ Stephen M. Schaetzel*
Stephen M. Schaetzel
Georgia State Bar No. 628653
Email: sschaetzel@m2iplaw.com
Anthony B. Askew
Georgia State Bar No. 025300
Email: taskew@m2iplaw.com

817 W. Peachtree Street
Suite 900
Atlanta, GA 30308                     **Attorneys for J. WALTER, INC., and**
Telephone: (404) 645-7724             **J. WALTER COMPANY, LTD.**
Facsimile:  (404) 645-7707

23

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, the undersigned counsel hereby certifies that the foregoing Brief In Support Of Defendants' Motion To Dismiss, To Stay Or To Transfer complies with the font and point selections approved by the Court in LR 5.1B and 5.1C.  The foregoing pleading was prepared on a computer using the Times New Roman font (14 point).

*/s/ Stephen M. Schaetzel*
Stephen M. Schaetzel

CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2011, I electronically filed the within and foregoing DEFENDANTS J. WALTER, INC. AND J. WALTER COMPANY, LTD.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO ENJOIN IOWA ACTION with the Clerk of Court using the CM/ECF system which will automatically send mail notification of such filing to counsel of record for Plaintiffs:

> William A. Capp
> *bcapp@duanemorriscom*
> 700 Atlantic Center Plaza
> 1180 West Peachtree Street
> Atlanta, Georgia 30309

> */s/ Stephen M. Schaetzel*
> Stephen M. Schaetzel
> Georgia State Bar No. 628653
> sschaetzel@m2iplaw.com
>
> **Attorneys for J. Walter, Inc.**
> **and J. Walter Company, LTD.**

817 W. Peachtree Street
Suite 900
Atlanta, GA 30308
Telephone: (404) 645-7724
Facsimile:  (404) 645-7707

25