**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CHEMFREE CORPORATION, and | ) | |
| ZYMO INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiffs, Counterclaim | ) | |
| Defendant | ) | Civil Action |
| v. | ) | No. 1:11-cv-03333-RWS |
| | ) | |
| J. WALTER, INC., and | ) | |
| J. WALTER COMPANY, LTD., | ) | |
| | ) | |
| Defendants, Counterclaim | ) | |
| Plaintiff, Third Party Plaintiff | ) | |
| v. | ) | |
| | ) | |
| ZYMO INTERNATIONAL, INC., | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF CHEMFREE
CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS**

## I.   INTRODUCTION

In a June 18, 2010 Order, this Court determined that all asserted claims in

four ChemFree patents directed to a bioremediating parts washer were invalid for

obviousness.  *See* Civil Action No. 1:04-cv-03711-JTC,[1] Dkt. No. 619.  That

determination, which has recently been affirmed by the Federal Circuit Court of

Appeals,[2] contained comprehensive findings and conclusions, including a detailed

statement of the reasons for the obviousness determination.  *Id.*, at 35-39.  Despite

that determination, on July 19, 2011, ChemFree obtained an additional patent

directed to the same bioremediating parts washer technology – U.S. Patent No.

7,980,257 (the "'257 patent") – and proceeded to make *in terrorem* use of the '257

patent, wrongfully asserting it against Walter.

The '257 patent is invalid for the same reasons as the four ChemFree

patents invalidated by the June 18, 2010 Order.  As plaintiff in the First Action

and the party that prosecuted the '257 patent, ChemFree is aware that the '257

---

[1] Civil Action No. 1:04-cv-03711-JTC is, for convenience, sometimes referred to as the "First Action."

[2] The June 18, 2010 Order was followed by a June 6, 2011 Order denying ChemFree's post-trial motions.  On March 13, 2012, the Federal Circuit entered a Judgment of affirmance, without opinion.  *See* Exhibit A.

patent claims are invalid for the same reasons set out in the June 18, 2010 Order.

Walter initiated a declaratory judgment action and brought counterclaims to

defend itself from ChemFree's wrongful assertions.

ChemFree seeks to justify its actions, and support its instant motion for

partial judgment on the pleadings, by pointing to immaterial, non-substantive

differences between the '257 patent claims and the claims of the four invalid

patents.  Dkt. No. 43-11 at 4.  However, in the First Action, ChemFree argued that

such "differences" were features of the claimed invention in the four litigated

patents.  For example, in the First Action, ChemFree argued that its claimed

cleaning fluid was "pH neutral."[3]  In the instant case, ChemFree argues that the

'257 patent claims are different because the cleaning fluid is "approximately pH

neutral."  *Id.*  Similarly, in the First Action, ChemFree argued that the claimed

---

[3]  *See*, e.g., First Action Dkt. No. 604, Plaintiff's Proposed Findings of Fact and
Conclusions of Law, p. 10 ("The inventors' testimony and corroborating records
established that [plaintiff ChemFree's] field prototypes possessed at least the
following features of the claimed invention: . . . a pH neutral, biodegradable, non-
flammable cleaning fluid . . .;" First Action, Dkt. No. 681, Plaintiff's Post Hearing
Brief, P. 19, "Figure 1" showing the alleged ChemFree invention to provide a
cleaning fluid including a pH of 7 (neutral pH); and First Action, Dkt. No. 634,
Plaintiff's Second Motion For Additional Findings and Conclusions, p. 17 ("The
pH of the [plaintiff ChemFree's] cleaning fluid was neutral, (about 7 pH), . . .")
(Emphases added).

cleaning fluid was capable of being recycled for an extended period of time without the need to monitor or adjust the pH.[4]  In the instant case, ChemFree argues that the claims of the '257 patent are different because the cleaning fluid can be recycled . . . "for an extended period of time . . . without need to monitor . . . or adjust the pH of the fluid over time." *Id.*  The changes in the '257 patent claims are so meaningless, so insubstantial that the Patent Office rejected them as obvious over the claims of ChemFree's other patents.  *See* Exhibit B, Non-final Office Action dated Nov. 26, 2010 for U.S. Serial No. 12/903,250.  ChemFree, as the party that submitted those meaningless, insubstantial "new" claim limitations to the Patent Office and as a party to the First Action, knows that the '257 patent claims are invalid for the same reasons set forth in the June 18, 2010 Order.

Walter has therefore properly pleaded, in a short and concise manner, that: (1) ChemFree was a party to the First Action; (2) on June 18, 2010, this Court entered an Order in the First Action ruling that all asserted claims of the four ChemFree patents were invalid; (3) the '257 patent is directed to the same

---

[4]  Dkt. No. (04-3711) 634, Plaintiffs Second Motion for Additional Findings and Conclusions at 17 ("The patented combination of LRC-1 microbes and SeaWash-7 [cleaner] lasted for an extended period of time without substantial degradation of the cleaning fluid . . . [and] without the need for complex monitoring and metering subsystems . . . .").

bioremediating parts washer (the alleged invention) as the four invalid patents; (4)

ChemFree sought to enforce the '257 patent against Walter even though, by virtue

of the foregoing, ChemFree knew that the claims of the '257 patent are invalid;

and (5) ChemFree has improperly attempted to enforce a patent it knows to be

invalid and thereby attempted to improperly expand the scope of the '257 patent.

*See* Dkt. No. 35 at Answer ¶¶ 16, 19, 24, 27-28, 37-39.  ChemFree has more than

reasonable notice of Walter's claims and defenses.

Moreover, Walter has <u>not</u> admitted infringement of any asserted claim.  To

the contrary, Walter has specifically denied such allegations.  Indeed, ChemFree

does <u>not</u> include any admission of infringement in its statement of "undisputed"

facts.  Dkt. No. 43-11 at 2-6.  To make this argument, ChemFree effectively seeks

to avoid the critical, first "*Markman*" claim construction step of construing the

'257 patent claim terms.  When claim construction is properly performed, it is

readily seen that Walter does not infringe.  Thus, there are at least material facts in

dispute that preclude judgment on the pleadings.  Walter respectfully submits that

ChemFree's motion should be denied.

## II.    ARGUMENT

### A.    Walter Has Not Admitted Infringement Of Any Claim

In its pleading, Walter expressly denied infringement of claims 1, 2, 8, 9 and 10 of the '257 patent.  *See* Dkt. 35, Defendants Answer, Affirmative Defenses and Demand for Jury Trial, ¶¶ 28-30, 36-37, 41-42, 101-105; *see also* Dkt. 37, Defendants' Response to Plaintiffs' Infringement Contentions, responses to Claims 1, 2, 8, 9 and 10, and Exhibit C, Defendants' First Supplemental Response to Plaintiffs' Infringement Contentions, responses to Claim 1.  ChemFree's assertion of admitted infringement is therefore in error.

ChemFree's argument cobbles together selected language from various documents, including many that are outside the pleadings in this case.[5]  ChemFree essentially equates the '257 patent claim language "microorganisms . . . capable of biodegrading the hydrocarbon contaminants," (Dkt. No. 37 (emphasis added)), with Walter's statement that its fluid includes "microorganisms capable of remediating or digesting hydrocarbon contaminants."  Dkt. No. 35 at ¶ 14

---

[5] The Eleventh Circuit has held that "a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence."  *Concordia v. Bendekovic*, 693 F.2d, 1073, 1076 (11th Cir. 1982).  Thus, the Court need not and, Walter submits should not, consider documents outside the pleadings here.

5

(emphasis added).  ChemFree fails to perform a proper claim construction analysis, which is the first and necessary step of determining patent infringement. When ChemFree's claims are properly construed, it is apparent that Walter does not infringe any of the subject claims.

### 1.  The Law of Claim Construction.

A patent infringement analysis is a two-step process: (i) construing the claims; and (ii) applying the construed claims to the accused device.  *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1329 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-389 (1996). Although claim construction is a question of law, applying the properly construed claims to the accused device is a question of fact.  *JVW Enterprises,* 424 F.3d at 1329.  To prove infringement, ChemFree must compare the accused device to the properly construed claims to determine if each claim limitation is met.  *Solvay, S.A. v. Honeywell Int'l Inc.,* 622 F.3d 1367, 1369 (Fed. Cir. 2010).

### 2.  Proper Construction of Claims 1 and 8.

Claims 1 and 8 are independent claims that include the following element:

Microorganisms substantially sustained within the fluid that are capable of biodegrading the hydrocarbon contaminants.

6

Dkt. No. 1-1.  The remaining claims (2, 9 and 10) are dependent on either claims 1

or 8 and, therefore, include this element.  *See, e.g., Edwards Life Sciences LLC v.*

*Cook Inc.*, 582 F.3d 1322, 1325 fn. 2 (Fed. Cir. 2009).  This element is properly

construed by consideration of the "intrinsic evidence" – the claims, the

specification and the prosecution history.  *Phillips v. AWH Corp.,* 415 F.3d 1303

(Fed. Cir. 2005) (*en banc*).  Here, the patent specification is sufficient.  *Id.* at 1315

(the specification is always highly relevant; usually it is dispositive.)  The '257

patent specifies that the claimed "microorganisms" must be able to remediate a

wide variety of "hydrocarbon contaminants."

> The biological component is preferably in the form of microorganisms
> that biodegrade organic compounds such as, for example and not
> limitation, hydrocarbons, oils, greases, petroleum by-products,
> creolates, polychloniated biphenols and other carbon based
> compositions.

Dkt. No. 1-1, Col. 5, lines 6-10.

The '257 patent claims do not specify a particular microorganism.  Thus,

because the '257 patent specification calls for the microorganisms to be capable of

biodegrading a wide range of hydrocarbons, the microorganisms claimed by the

'257 patent are unusually robust - able to bioremediate all oils, greases, petroleum

by-products, creolates,[6] polychlorinated biphenols and other carbon based

compositions.  The '257 patent claims, properly construed, thus require

microorganisms that can <u>biodegrade</u> literally any hydrocarbon.[7]

The term "biodegrade" is likewise properly construed according to the '257

specification, which provides that the organic waste (the contaminants) is to be

broken down "into its non-contaminating components."  Dkt. No. 1-1, Col. 3,

lines 9-11.  Thus, "biodegrade" means more than merely digesting or remediating

the waste; "biodegrade" means <u>completely</u> breaking down the contaminants into

harmless ("non-contaminating") components.

The Walter parts washers do <u>not</u> employ such microorganisms.  The Walter

microorganisms can remediate typical oil cutting fluid, lubricant or a light grease.

Walter makes no claim that they can remediate any carbon based composition.

Rather, Walter's promotional material readily addresses that fact, stating that its

parts washers address only oil and "light greases."  Walter makes no claim to

"biodegrade" (completely break down) any hydrocarbon such as asphalt or

---

[6] Walter believes this to be a typographical error; "creosotes" appears to be
correct.

[7] For example, polychloninated biphenols are typically toxic substances that were
widely used as coolants and pesticides.

polychloniated biphenols.  Dkt. No. 1-1.  Hence, there is no infringement of Claims 1, 2, 8, 9 and 10.

Because ChemFree's conclusory argument for infringement fails to perform the necessary first step of claim construction (*Markman,* 517 U.S. at 388-389)*,* it also fails to then compare the properly construed claim to the accused devices. ChemFree's motion is a transparent attempt to avoid a proper claim construction analysis, and violates well established precedent.  *Id.*

Finally, in addressing a Rule 12(c) motion, the pleadings are liberally construed and the court does not resolve contested facts.  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (judgment pursuant to Rule 12(c) is only appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleading.").[8]  Here, Walter's

---

[8] As shown, ChemFree's Motion goes beyond the pleadings, including citations to Walter's Response to Infringement Contentions in the instant case, Walter's Response to Infringement Contentions in the First Action, and the prosecution history of the '257 patent.  Accordingly the instant motion may be considered a premature motion for summary judgment on this issue.  *See* Fed. R. Civ. P. 12(d); *Latecoere v. United States Department of the Navy*, 19 F.3d 1342, 1344, 1356 (11th Cir. 1994).  While the Court need not go beyond the pleadings to deny the present motion, Walter respectfully requests that if the court finds the facts and arguments  presented herein insufficient to defeat ChemFree's motion, Walter be granted time to conduct discovery pursuant to Federal Rule of Civil Procedure

pleading denies the asserted claim of infringement and a proper application of the law demonstrates that there is no infringement.  Regardless, there are issues of disputed facts that are not amenable to resolution on the pleadings.

### B.     Count II is A Well Pleaded Patent Misuse Counterclaim

ChemFree belatedly moves under Rule 12(b)(6) on grounds that Count II of Walter's Counterclaim fails to state a claim upon which relief can be granted. Dkt. 43-11 at 1.  When addressing such a motion, the court construes the pleading liberally in the pleader's favor.  *See, e.g., FTC v. Phoebe Putney Health Sys. Inc.*, 663 F.3d 1369, 1375 (11th Cir. 2011).  All well-pleaded allegations are presumed true and inferences drawn in favor of the pleader.  *Id.*

A patentee commits misuse when he exploits a patent in a manner as to exceed its lawful scope.  The doctrine is grounded in the policy-based desire to "prevent a patentee from using the patent to obtain market benefit beyond that which inheres to the statutory patent right."  *Princo America  Corp. v. ITC,* 616 F.3d 1318, 1328 (Fed. Cir. 2010) (*en banc*).   Here, the "lawful scope" of the '257

---

56(d)(2).  Walter attaches hereto the declaration of Stephen M. Schaetzel showing that claim construction discovery is still ongoing pursuant to this Court's Local Rules and the Scheduling Order, and that such discovery is necessary to construe the claims.

patent is null — it has <u>no</u> lawful scope in view of this Court's invalidity determination in the First Action.  ChemFree impermissibly sought to extend that scope by knowingly attempting to license and enforce an invalid patent.

The assertion of a patent that is known to be invalid constitutes patent misuse.  *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1558 (Fed. Cir. 1995).  ChemFree asserts that 35 U.S.C. §271(d)(3) "protects" its wrongful assertion of the '257 patent.  Section §271(d)(3) provides that the mere filing of a lawsuit, without more, is not patent misuse.  This is consistent with case law:  "The bringing of a lawsuit to enforce legal rights does not itself constitute . . . patent misuse[s]; there must be bad faith and improper purpose in bringing the suit . . ." *Glaverbel,* 45 F.3d at 1558.

The present situation is not a mere effort to enforce patent rights.  Rather, ChemFree simply obtained an additional (but invalid) patent by making a meaningless claim change, then threatened and sued Walter for infringement of that invalid patent.  That constitutes an "improper purpose."  Walter has <u>not</u> acted irresponsibly.[9]  To the contrary, Walter is defending itself against claims that have

---

[9] ChemFree, once again, argues that "Walter's counsel" was sanctioned under Rule 11.  The subject Rule 11 violation was by Walter's previous counsel.

already been litigated and appropriately decided adversely to ChemFree.  As

alleged, and presumed true, ChemFree knows that the '257 patent is invalid.

When a litigant, as here, brings "suit to enforce a patent with knowledge that the

patent is invalid . . ., and the litigation is conducted for anticompetitive purposes,"

that litigant has effectively misused the patent in suit as part of a sham litigation.

*CR Bard v. M3 Sys., Inc.,* 157 F.3d 1340 (Fed. Cir. 1998).[10]

---

ChemFree again fails to inform the Court that Walter subsequently obtained the undersigned new counsel and continues to make inflammatory comments and personal attacks against Walter and its new counsel.  This Court has previously instructed ChemFree to refrain from such attacks:  "The Court cautions Plaintiff's counsel to refrain from making further inflammatory comments and personal attacks against Defendants, Defendants' counsel and Defendants' witnesses." Dkt. No. (04-3711) 415 at 6.  Walter and its counsel deny such accusations.  As in the past, Walter and its counsel will not respond in kind and will instead focus on the merits of this case.

[10] The same facts that support a finding of sham litigation (and an antitrust violation) also support a finding of patent misuse."  *Moore U.S.A., Inc. v. Standard Register Co.,* 139 F. Supp. 2d 348, 362 (W.D.N.Y 2001).  In *McKesson Info. Solutions, LLC v. Trizetto Group, Inc.,* 2005 U.S. Dist. LEXIS 6733, *4-5 (D. Del. Apr. 20, 2005) the court denied a motion to strike an affirmative defense that asserted the patent-in-suit was "unenforceable because plaintiff comes into Court with unclean hands.  Plaintiff has committed patent misuse by attempting to enforce a patent it should reasonably know is invalid and not infringed."

### C.    Walter's Affirmative Defenses Are More Than Sufficient to Put ChemFree on Notice of Walter's Positions

Walter's Second, Third, Fourth, Seventh, Eighth, Ninth, and Tenth[11]
Affirmative Defenses, when considered properly in conjunction with Walter's
Answer and Counterclaim, put ChemFree on notice of Walter's positions under
Rule 8(c).[12]  Motions to strike are disfavored and a defense should not be stricken
"unless it is clear that it can have no possible bearing upon the subject matter of
the litigation."  *Mathis v. Velsicol Chemical Corp.,* 786 F. Supp. 971, 974-975
(N.D. Ga. 1991) (quoting *Daugherty v. Firestone Tire & Rubber Co.,* 85 F.R.D.
693 (N.D. Ga. 1980)).   Striking an affirmative defense is a "drastic remedy" that
should not be granted when the sufficiency of the defense depends on disputed
facts or unclear questions of law.  *Id.* at 974; *Graphic Packaging Int'l, Inc. v. C.W.
Zumbiel Co.,* 2011 U.S. Dist. LEXIS 135975, *4-5 (N.D. Ga. Aug. 1, 2011).

ChemFree's motion regarding Walter's Affirmative Defenses under Rule
12(f) is based on an alleged failure to meet the pleading requirements of *Twombly*

---

[11] Walter agrees to withdraw Affirmative Defense Fifteen directed to lack of
personal jurisdiction.

[12] If the Court determines that Walter's pleading in any way fails to meet the
appropriate standard, Walter respectfully requests that the Court allow Walter an
opportunity to amend (under the liberal standards of Rule 15) its pleadings.

and *Iqbal.*  ChemFree's application of those cases is in error.  Moreover, Walter

ahs more than adequately pleaded these claims.

### 1. This Court Has Held That the Heightened Pleading Requirement of *Twombly* and *Iqbal* Does Not Apply to Affirmative Defenses.

ChemFree premises its entire argument on an assertion that the pleading

requirements of *Twombly* and *Iqbal* apply to affirmative defenses.  ChemFree fails

to acknowledge that no federal court of appeals has considered the issue and that

there is a split among the district courts, including those in the Eleventh Circuit

regarding the issue.  *See e.g., Adams v. J.P. Morgan Chase Bank N.A.,* 3:11-cv-

337, 2011 U.S. Dist. LEXIS 79366, *6-8 (M.D. Fl. July 21, 2011) (collecting

cases).  This Court has addressed the issue and opined that the standards of

*Twombly* and *Iqbal* do <u>not</u> apply to affirmative defenses.[13]  *See Floyd v. SunTrust*

*Banks, Inc.,* 2011 U.S. Dist. LEXIS 65190, 20-22 (N.D. Ga. June 13, 2011).  *Cf*

*Graphic Packaging International,* 2011 U.S. Dist. LEXIS 135675, * 6-8 (N.D.

Ga. August 1, 2011) ("invalidity counterclaims and affirmative defenses that

---

[13] While this is the "minority" view, it has been adopted by a substantial number
of courts in this district and in other districts.  *See e.g, Adams,* 2011 U.S. Dist.
LEXIS 79366 at *6-8.

allege only their statutory bases are adequate to survive a Rule 12 motion").

Accordingly, Walter respectfully submits that ChemFree's motion fails because it is based on an erroneous pleadings standard.  Regardless, Walter's affirmative defenses are more than legally sufficient, even under *Twombly* and *Iqbal*.  Walter's analysis therefore, focuses on the heightened standard.

### 2.  Walter's Same Patent Defense is Well Pleaded

Walter's Second Affirmative Defense is not directed merely to "double patenting." Instead, as Walter stated in its Second Affirmative Defense and explained in its Counterclaim, the claims of the '257 patent are directed to the same invention as the four patents found invalid in the First Action and recently affirmed by the Federal Circuit.  *See* e.g. Dkt. No. 35 Counterclaim ¶¶ 4, 5, 17, 19, 22, 23, 24, 25, 26, 37, 39.

ChemFree argues that the claims of the '257 are not "identical" to the claims of the patents involved in the prior litigation.  The asserted differences, however, are meaningless and insubstantial.  ChemFree has itself consistently treated all of its patent claims as directed to the same invention.  For example, in its opposition to Walter's motion to transfer this case to Iowa, ChemFree asserted that Walter's claims infringe the '257 patent "for the same reasons" that Walter

15

"infringed" ChemFree's invalid claims.  Dkt. No. 8 at 4.  As a further example,

before the Federal Circuit, ChemFree argued that its "invention" did more than

just rinse and biodegrade organic matter because the cleaning fluid *inter alia,*

"remained at a stable, neutral pH for an extended period of time." Exhibit E,

Reply Brief of Plaintiff-Appellant, at 26-27.  ChemFree cannot have it both ways.

ChemFree cannot argue that its "extended period of time" limitation was a feature

of the claimed invention in the First Action, and now argue that the "extended

period of time" limitation in the '257 patent claims differentiate the '257 patent

from the claims found invalid in the First Action.  As Walter alleged, the '257

patent is directed to the same invention.  Dkt. No. 35 at Counterclaim ¶ 24.

Moreover, if considered necessary, Walter's Counterclaim sets forth

additional facts supporting its Second Affirmative Defense.  For example, Walter

asserted that all of ChemFree's asserted patents were directed to parts washing

technology having three basic components:

> (a)  a biodegradable, non-caustic, non-toxic, non-flammable, oil-
> dispersant degreasing cleaning fluid; (b) a use of microorganisms that
> break down and remediate grease and oil; and (c) a physical structure
> and associated mechanical and electromechanical assemblies of a
> "sink-on-a-drum" to circulate the cleaning fluid and contain it while it
> breaks down oil and grease contaminants.

16

Dkt. No. 35 at ¶¶ 17, 24.  In the last sentence of paragraph 24, Walter expressly alleged that the "'257 Patent is directed to the same invention as the four ChemFree patents found to be invalid in the First Georgia Action."  ChemFree ignores these statements in making its double patenting argument.  These statements are more than sufficient to put ChemFree on notice of Walter's defense and provide a plausible basis for that defense.

### 3.  Walter's "Patent Misuse" Affirmative Defense is Well Pleaded

Walter's Third and Fourth Affirmative Defenses placed ChemFree on notice of Walter's patent misuse defenses.  ChemFree's assertion that it has an unfettered "statutory right" to enforce its patent ignores a key theory of patent misuse – "sham litigation."  According to the Federal Circuit, when a litigant brings a "suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes," the patentee can be liable for an antitrust sham litigation violation.  *C.R. Bard v. M3 Sys.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998); *see also Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60 (1993). ChemFree's tactic of obtaining an additional (but invalid) patent directed to the

same invention, then threatening and suing Walter over that patent after this Court

ruled the invention was obvious, is likewise patent misuse.  ChemFree's Motion

shows that it is on notice that Walter asserts that it is "knowingly" seeking to

enforce an invalid patent and that Walter asserts that its attempt to force Walter

into taking a license and ChemFree's infringement claim are an attempt to

interfere with Walter's right to market its products in competition with ChemFree.

Dkt. No. 43-11 at 16-17.

Moreover, the pleadings taken in their entirety show that Walter's defense

is based on more than a failed litigation theory.  *See e.g.* Dkt. No. 35 at

Counterclaim ¶¶ 36-39.  In the First Action, ChemFree sought to enforce four

other, related patents having the same specification and directed to the same basic

invention: a bioremediating parts washer.  Before the '257 patent even issued,

asserted claims of those four patents were held to be invalid.  Dkt. No. (04-03711)

619; Exhibit A.  In fact, not only one, but two District Court judges came to that

conclusion.  Dkt. No. 35 at ¶¶ 19, 21-22.

As discussed above, there are no meaningful distinctions between

ChemFree's invalid patent claims and the '257 patent claims.  No reasonable

litigant could expect to succeed on the merits of its claims in this suit given that

there is no meaningful distinction between the claims of the '257 and the asserted claims of the previously litigated patents.[14]  Based on Walter's allegations, which are presumed true, it is plausible that Walter can prove facts sufficient to demonstrate that ChemFree engaged in sham litigation and patent misuse.  *Moore USA*, 139 F. Supp. 2d at 362; *McKesson*, 2005 U.S. Dist. Lexis 6733 at *4-5.

### 4.  Walter's Unclean Hands Defense is Well Pleaded

Any party seeking equitable relief (as ChemFree does here[15]) must come into court with "clean hands."  Unclean hands is a defense to patent infringement. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1029 (Fed. Cir. 1992).  Such a claim asserts that one has violated an "equitable principle" such as conscience or good faith and that the violation has an "immediate and necessary relation to the equity that he seeks in the litigation." *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933).

The right to enforce a patent is not "unlimited."  *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003).  "[I]nfringement actions

---

[14] *See Professional Real Estate Inventors,* 508 U.S. at 60 (a plaintiff's lawsuit is meritless where "no reasonable litigant could expect success on the merits.")

[15] ChemFree's Complaint requests both a preliminary and permanent injunction.

19

initiated and conducted in bad faith contribute nothing to the furtherance of the polices of either the patent law or the antitrust law." *Locite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 876 (Fed. Cir. 1985) (quoting *Handgards, Inc. v. Ethicon, Inc.,* 6014 F.2d 986, 993 (9th Cir. 1979). Further, an unclean hands defense is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller,* 290 U.S. at 245-46.

ChemFree acted in bad faith and in an "unconscionable" manner when it threatened Walter with a lawsuit and preliminary injunction proceedings for infringement of a patent that ChemFree knew was invalid, particularly in view of this Court's now affirmed June 18, 2010 Order. [16] Walter's defense has a "necessary relation" to the matter in the litigation as it is directly tied to ChemFree's claim for relief. As its brief makes clear, ChemFree is on notice of Walter's defense.

ChemFree confuses the issue by addressing the issue of unclean hands in the context of inequitable conduct when Walter did not plead inequitable conduct.

---

[16] Walter's theory is therefore <u>not</u> based on inequitable conduct or fraud on the patent office as ChemFree intimates. This is clear from the pleadings, as Walter did not make any such assertions, but instead alleged that ChemFree knew that the '257 patent was invalid.

ChemFree's reliance on *Therasense, Inc. v. Becton Dickinson and Co.,* 649 F.3d 1276, 1287 (Fed. Cir. 2011) (*en banc*) is misplaced.  The *Therasense* court noted that inequitable conduct evolved from three Supreme Court unclean hands cases, but the case was limited to inequitable conduct and did <u>not</u> concern the application of unclean hands to conduct outside of the prosecution history of the patent-in-suit.  *Id.* Unclean hands is a viable defense even in cases that do not involve inequitable conduct.  *See e.g., A.C. Aukerman,* 960 F.2d at 1020 (defense to patent infringement); *Serdarevic v. Advanced Med. Optics, Inc.,* 532 F.3d 1352, 1361 (Fed. Cir. 2008) (defense to laches).

ChemFree wants to debate the facts.  Walter stands ready.  But, at this stage, the facts as pleaded are accepted as true.  Walter pleaded more than sufficient facts to state a claim for unclean hands.  It is "plausible" that Walter can prove facts showing that ChemFree's actions are "offensive to public policy."

### 5.  Walter's Res Judicata, Estoppel, Waiver, Release, and/or Laches Defenses are Well Pleaded

Walter narrowly drew its Eighth Affirmative Defense to ChemFree's false marking claim.  Walter asserted in its Answer and Counterclaim that ChemFree and Walter had been involved in a prior litigation.  *See e.g.,* Dkt. No. 35 at

Answer ¶ 48; Counterclaim ¶ 4.  Accordingly, Walter's claim of *res judicata*, estoppel, waiver, release and/or laches defense plausibly has a bearing on the litigation and is <u>not</u> irrelevant to the issues involved in the case; thus it should not be dismissed.  *See Mathis,* 786 F. Supp. at 974-975.

*Res judicata*, or claim preclusion, "prevents parties . . . from raising legal theories, claims for relief, or defenses which could have been raised in the prior litigation, even though such claims were never actually litigated in the prior case." Moore's Federal Practice – Civil § 131.13.  Because Walter specifically asserted that ChemFree's false patent marking claim was barred by *res judicata*, ChemFree was put on sufficient notice of Walter's defense.

Much like the patent invalidity claims in *Graphic Packaging,* 2011 U.S. Dist. LEXIS 135975, *5 or the statute of limitations defense in *Adams*, 2011 U.S. Dist. LEXIS 79366, at *12-13, a defense of claim preclusion specifying the particular claim at issue is sufficient to put the plaintiff on notice of the defense. Contrary to ChemFree's assertions, Walter pleaded factual allegations regarding *res judicata*.  By including the fact of the prior litigation in its counterclaim and referring to ChemFree's false marking claim, Walter's defense is well pleaded.

ChemFree was well aware during the First Action that Walter marked

22

products with the Overland patent number.  *See e.g.,* Dkt. No. (04-3711) 604,

Plaintiff's Post-Trial Proposed Findings and Conclusions, at 24 (Defendants mark

their model IO-200 parts washer with . . . U.S. Patent No. 6,057,149 to Overland;

Exhibit D at pg 9.  ChemFree even took the deposition of Mr. Overland in the First

Action.  ChemFree thus, as alleged, had a full and fair opportunity to pursue its

false marking claim in the previous litigation but chose <u>not</u> to do so.  Walter's

claims of estoppel, laches, waiver and release are based on these same facts.

ChemFree's intimation that Walter routinely pleads affirmative defenses

such as estoppel and laches to impose unnecessary expense is unjustified.  *See* fn.

9, *supra.*  Given the prior litigation between the parties a defense of *res judicata*

or estoppel based on that previous litigation is more than plausible.[17]

### 6.  Walter's Failure to Mark Defense Is Well Pleaded

Walter has a viable marking defense for at least the first 10 days of the

alleged infringement period.  As ChemFree admits, it did not provide "actual

notice" of the patent until 10 days after the patent issued.  Dkt. No. 43-11 at 22.

Thus, Walter is not liable for damages until, July 29, 2011, the day ChemFree

---

[17] In fact, one must wonder how much expense was invested in the filing of this
motion that does not advance a determination of the merits.  *See Aros*, 2011 U.S.
Dist. Lexis 125870, *10 fn. 3.

provided actual notice of the infringement.  35 U.S.C. §287.  While this may not be a substantial length of time, there is no duration requirement under the marking statute. *Id.*

Moreover, ChemFree's notification of its alleged provisional rights under 35 U.S.C. § 154 does not provide actual notice of the patent as required by 35 U.S.C. § 287.  Section 287(a) requires actual notice to the accused "to assure that the recipient knew of the adverse patent during the period in which liability accrues, when constructive notice by marking is absent." *SRI Int'l, Inc. v. Adv. Tech. Lab.*, Inc., 127 F.3d 1462, 1470 (Fed. Cir. 1997).  Damages do not start to accrue until a patent is issued.  *Gustafson, Inc. v. Intersystems Indus. Products, Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).  Walter's defense is appropriate and well pleaded.

### 7.  **Walter's Short, Plain Statement Defense Is Well Pleaded**

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8(d)(1) in conjunction with Rule 8(a)(2) underscore the emphases placed on clarity and brevity by the Federal rules.

Prolix pleadings violate Rule 8.  ChemFree's Complaint is replete with

extensive and argumentive narration that is inconsistent with Rule 8's emphasis on clarity and brevity.  Even so, in its Answer, Walter carefully parsed ChemFree's Complaint allegations and admitted what it could while denying the remainder as required by Rule 8(b).  Walter's Tenth Affirmative Defense properly guards against any claim that when responding to ChemFree's lengthy narrative Walter admitted an allegation it did not intend to or that Walter failed to admit an allegation. Walter's defense is well pleaded.

## III.   CONCLUSION

For the foregoing reasons, Walter submits that ChemFree's motion should be denied.

Respectfully submitted, this 15th day of March, 2012.

McKeon, Meunier, Carlin & Curfman, LLC

*/s/ Stephen M. Schaetzel*
Stephen M. Schaetzel
Georgia State Bar No. 628653
Email: sschaetzel@m2iplaw.com
Anthony B. Askew
Georgia State Bar No. 025300
Email: taskew@m2iplaw.com

**Attorneys for Defendants,**
**Counterclaim Plaintiff, Third Party**
**Plaintiff**

25

817 W. Peachtree Street, Suite 500
Atlanta, GA 30308
Telephone: (404) 645-7724
Facsimile:  (404) 645-7707

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1D, the undersigned counsel hereby certifies that the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF CHEMFREE CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** complies with the font and point selections approved by the Court in LR 5.1B and 5.1C.  The foregoing pleading was prepared on a computer using the Times New Roman font (14 point).


*/s/ Stephen M. Schaetzel*
Stephen M. Schaetzel

27

CERTIFICATE OF SERVICE


I hereby certify that on March 15, 2012, I electronically filed the within and

foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF CHEMFREE**

**CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE**

**PLEADINGS** with the Clerk of Court using the CM/ECF system which will

automatically send mail notification of such filing to counsel of record:

> William A. Capp
> *bcapp@duanemorriscom*
> 700 Atlantic Center Plaza
> 1180 West Peachtree Street
> Atlanta, Georgia 30309


> */s/ Stephen M. Schaetzel*
> Stephen M. Schaetzel
> Georgia State Bar No. 628653
> sschaetzel@m2iplaw.com
>
> **Attorneys for Defendants,**
> **Counterclaim**
> **Plaintiff, Third Party Plaintiff**

817 W. Peachtree Street
Suite 500
Atlanta, GA 30308
Telephone: (404) 645-7724
Facsimile:  (404) 645-7707